GEORGE W. BENNETT, an Infant, by WILLIAM W. BENNETT, His Guardian ad Litem, Respondent, v. INTERNATIONAL RAILWAY COMPANY, Appellant.

Fourth Department, November 21, 1917.

Electricity — liability of street railway company for shock to boy from iron trolley pole supporting feed wire — res ipsa loquitur — presumption of negligence — evidence — excessive verdict.

Where, in an action to recover for personal injuries to a boy five years of age, who while playing in the street touched one of defendant's iron trolley poles with a cap pistol and received therefrom a current of electricity, it appears that the pole supported a heavily charged feed wire or cable which furnished current for defendant's street cars; that immediately after the accident it was discovered that the cable had broken away from its fastening, that the glass insulator was split, and that while the cable was still held by the tie wire, it came in contact at intervals with the pole and that the pole was struck by lightning about eight hours before the accident and the condition, apparently, was not discovered or remedied by the defendant during such time, although it was in a thickly-populated portion of the city, the doctrine of res ipsa loquitur was applicable, and the situation unexplained created a presumption of negligence on the part of the defendant.

Evidence examined, and held, insufficient to overcome said presumption.

As the plaintiff was not disfigured, and as there was no visible evidence of any injury to his person or any evidence of permanent injury or impairment of his mental faculties, a verdict of $3,000 was excessive and should be reduced to $1,500.

FOOTE, J., dissented in part.

APPEAL by the defendant, International Railway Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 28th day of March, 1917, upon the verdict of a jury for $3,000, and also from an order entered in said clerk's office on the same day, denying defendant's motion for a new trial made upon the minutes.

*R. C. Vaughan*, for the appellant.

*George P. Keating*, for the respondent.

DE ANGELIS, J.:

On the 2d day of June, 1916, at about half after six o'clock in the evening, the plaintiff, a boy five years of age, playing

tag on the east side of Jefferson street near the front of his father's house in the city of Buffalo, touched with a cap pistol one of defendant's iron trolley poles and therefrom received a current of electricity that knocked him down producing the injuries for which he has recovered a verdict of $3,000.

This pole was one of the defendant's poles supporting its feed wire or cable extending along the easterly side of the street which furnished the electric current that propelled the defendant's cars. When in proper condition, the cable was insulated and tied to a glass or porcelain insulator attached to the top of the pole. Immediately after the accident it was discovered that the cable had broken away from its fastening to this pole, the glass insulator was broken in two, split, and while the cable was still held by the tie wire, it came in contact at intervals with the pole, thereby making a ground through the pole. This was a forty-feed wire or cable and carried 550 to 600 volts.

Unexplained, this situation created a presumption of negligence on the part of the defendant and would have justified the jury in rendering a verdict in favor of the plaintiff. The doctrine of *res ipsa loquitur* was applicable. (*Moglia* v. *Nassau Electric Railroad Co.*, 127 App. Div. 243.) It appeared, however, that the day of the accident was a rainy day in which several thunder showers occurred. A person who lived across the street from the pole testified on behalf of the plaintiff that between ten and eleven o'clock on the morning of the day of the accident he saw just after a heavy clap of thunder a flame, the insulation burning on the top of the pole, and that he thought the lightning struck the pole. He testified further that the sidewalk at the foot of the pole was dry all that day, indicating that the pole was a live pole. A witness called by the plaintiff testified in a halting manner to what the jury would have been justified in finding in effect that at some time prior to the accident, in the year of the accident, he had found the pole slightly charged with electricity.

The defendant's night dispatcher testified that the defendant did not get notice of the trouble with the pole till about twenty-seven minutes after nine o'clock on the night of the day of the accident and that immediately the emergency depart-

ment was notified of the trouble. Defendant's emergency line-man testified that he got notice of the trouble at twenty-five minutes after nine o'clock that night and in the hurry-wagon or automobile driven by his chauffeur he reached the place of the pole at ten o'clock where he found the condition of things as above described. It appeared that the emergency station of the defendant in the city of Buffalo was at the corner of Main and Virginia streets; that there were two emergency crews on duty day times and two at night, and that the defendant had three extra crews doing repair work in the day time. There was no evidence of any system of inspection of the defendant's lines, except that the wagons go over the lines every week or two.

The appellant argues that the judgment appealed from should be reversed upon two grounds, to wit, that no actionable negligence of the defendant has been shown and that the verdict is excessive.

Bearing upon the question of the defendant's negligence, we are called upon to determine whether or not the presumption of negligence on the part of the defendant arising from the nature of the accident is explained by uncontroverted evidence. I think that the evidence fairly establishes the fact that the pole was struck by lightning on the morning of the day of the accident without fault on the part of the defendant. The slight proof of the presence of electricity in the pole at some time in the year prior to the accident is so vague and the extent of such electricity so slight as to rob the evidence of the presence of such electricity of any materiality in connection with the accident.

The only other basis for the claim that the current of electricity which came in contact with the plaintiff from the pole was the result of the defendant's negligence is what may be predicated upon the time that expired between the lightning stroke and the accident. The lightning stroke occurred between ten and eleven o'clock in the morning and the accident, at half after six in the evening, so that during about eight hours of day time this live pole was allowed to remain as a menace to human life or limb. It must be remembered that this was an iron pole, a good conductor of electricity. The happening of frequent thunder storms during the day was

notice to the defendant of probable electric disturbances that might affect its lines. The defendant maintained double tracks in Jefferson street so that many of its cars must have passed the location of this pole during the eight hours. The defendant failed to show any system of inspection looking to the protection of the public from danger in such a case as this. It would seem that although the contact of the feed wire or cable with the pole was not frequent, yet the diversion of the electric current from this feed wire must have been sufficient appreciably to affect the supply of power. This fact would seem to have conveyed notice of the trouble to the defendant. Should it be possible for such a menace to exist for eight hours in the day time in a thickly-populated portion of the city of Buffalo without convincing evidence that the defendant exercised all reasonable care to discover and remove the menace? I think not. So I think that the defendant's negligence was fairly established.

It seems to me, however, that the verdict is excessive. The plaintiff was not disfigured. Indeed there was no visible evidence of any injury to his person. There is no evidence of permanent injury. The story told by the plaintiff himself when called to the stand by the defendant is considerably in conflict with that of his mother and shows him to be a bright, active, alert child. The testimony of Miss Johnson, his teacher, indicates nothing unusual in the boy, except the lack of home discipline. I think the verdict should be reduced to the sum of $1,500.

All concurred, except FOOTE, J., who dissented and voted for absolute reversal upon the ground that the verdict is against the weight of the evidence upon the question of the defendant's negligence in failing sooner to discover that the glass insulator had been broken by lightning.

Judgment and order reversed and new trial granted, with costs to appellant to abide event, upon the ground that the verdict is excessive, unless the plaintiff shall, within ten days, stipulate to reduce the verdict to the sum of $1,500 as of the date of the rendition thereof, in which event the judgment is modified accordingly, and, as so modified, is, together with the order, affirmed, without costs of this appeal to either party.