JOHN MOLNAR, SR., as Guardian ad Litem of JOHN MOLNAR, JR., and JOHN MOLNAR, SR., Individually, Respondents, *v.* SLATTERY CONTRACTING Co., INC., Appellant.

First Department, May 12, 1959.

*George A. Garvey* of counsel (*Garvey & Conway,* attorneys), for appellant.

*James P. McGarry* for respondents.

STEVENS, J. This is an appeal from a judgment entered in a negligence action, after trial, in favor of the infant plaintiff in the sum of $12,211, and in favor of the guardian ad litem, his father, in the sum of $500.

The accident happened about 9:00 A.M., August 1, 1953, and occurred as a result of the fall of the infant plaintiff into an excavation. The infant, then six years of age, and his cousin, a boy of about eight and one-half years of age, while returning home from a barbershop, went along an excavated area which ultimately became what is known as the Cross Bronx Expressway. At one point, not an intersection, the boys stopped to look into the excavation. The infant plaintiff testified he wanted to show his cousin how deep the excavation was, so he picked up a rock and as he was about to throw it the earth gave way and he fell into the excavation which at that place was about 12 to 15 feet deep with a slant or slope of 30 degrees. The infant sustained a laceration of the scalp requiring six sutures, sprain of the left elbow, bruises, abrasions, etc., with medical bills, including emergency hospital treatment, totalling approximately $250.

It was undisputed that it was not necessary for the boy to travel that way, or to cross the excavation in order to reach his home. The point of his fall was some 20 to 25 feet from the nearest public street on land which had been acquired by the State.

Testimony by and on behalf of the plaintiff was to the effect that there were no barricades, fences or warning signs in that immediate area and that a footpath ran alongside the excavation which many persons used to the knowledge of the defendant. Moreover, a spring in the general vicinity had weakened the wall of the excavation near the point of the accident.

Testimony for the defendant, a construction contractor, was that barricades in the form of wooden horses had been placed at nearby spots which on several occasions had been torn down, damaged or removed by persons unknown, and replaced by the defendant whenever it learned of the condition. Defendant's witness had no personal knowledge if barricades were at that location on the morning in question.

The appellant on this appeal argues (1) the plaintiff being a trespasser, or at most a licensee, the complaint should have been dismissed. The place where the accident occurred was not part

of what had been formerly an intersection or part of a public street, and at this time the property had not yet been dedicated to a public use.

It argues further (2) that the court committed substantial errors in its charge and in its refusal to charge which require a reversal of the judgment, and, lastly, (3) the damages awarded the infant plaintiff were grossly excessive.

The respondents urge that the errors in the charge, if any, were insignificant and the award was not excessive. They assert (1) "The accident occurred on a patently public way whereat an attractive nuisance imposes liability on its creator to a child of tender years"; (2) that the defendant, having created a dangerous condition and trap without providing required warnings, must be held responsible, and (3) that there was a statutory duty on the defendant to erect suitable obstructions.

In light of the major contentions of the respective parties, consideration must be given to the possible legal status of the infant and the nature of the obligation or duty, if any, owed to one in a particular category.

Preliminary to such consideration, reference might be made to some portions of the charge and the refusals to charge to which the defendant took exception.

The court charged: "In some states there is a theory of law called the attractive nuisance theory  *  *  *  New York State does not recognize that doctrine, but they go pretty close to it in some respects, and they say that people owning property or having apparatus or machinery or building or anything in close proximity to a public place or abutting a public place must take that into consideration and avoid a situation which might possibly hurt children in the area."

The court's reference and charge as to traps was not clear, nor was its observation as to the duty owed a licensee or trespasser.

The court refused to charge that there was no obligation by statute or ordinance to provide barricades at the place of the accident, contenting itself with the statement that no one had called its attention to any specific statute involved and it was not aware of any. In light of the record, the charge requested should have been given, though the existence or nonexistence of a statute would not necessarily be determinative.

While some of the New York decisions might seem to be based upon the attractive nuisance doctrine, despite the express rejection of the doctrine in this State (*Morse* v. *Buffalo Tank Corp.*, 280 N. Y. 110), closer analysis reveals that they involve

a recognition of the propensities of children to play, climb, etc. (*Collentine* v. *City of New York*, 279 N. Y. 119, 125) and a recognition of a lack of such awareness on their part of the dangers involved as would be present in a more mature person. Also, as Warren points out, some of the "confusion arises from a failure to distinguish clearly between the rights of invitees, licensees and trespassers." (3 Warren, Negligence, § 133, subd. 2, par. [b].)

Even in such cases "The defendant may not be cast in damages, unless it appears (1) that the appliance attracted children; (2) that it was inherently dangerous, or led or attracted the child into or upon another object inherently dangerous; and (3) that defendant knew or ought to have known of these things." (*Parkes* v. *New York Tel. Co.*, 120 Misc. 459, 460, affd. 207 App. Div. 869.)

In light of the reference by the court to the doctrine of attractive nuisance, there was insufficient clarification of the doctrine, which could well have misled or confused the jury.

Nor do I think the degree of care required, contingent upon the status of the injured party, as the jury should determine it, was sufficiently defined. This is true even though the standard of care required of children is lower, at times, than that required of an adult under the same circumstances. (*Gloshinsky* v. *Bergen Milk Transp. Co.*, 279 N. Y. 54, 58.)

"Toward mere trespassers or bare licensees the rule is well settled that the only duty owing to them by the owner or occupier of land is to abstain from inflicting intentional, wanton or willful injuries unless he maintains some hidden engine of destruction, such as spring guns or kindred devices, upon his property." (*Mendelowitz* v. *Neisner*, 258 N. Y. 181, 184.)

He is not liable in damages to a trespasser or bare licensee for a mere defect in the premises. (*Breeze* v. *City of New York*, 249 App. Div. 856, affd. 275 N. Y. 528.) The cases seem to make no distinction between children and adults where they are trespassers.

Where a child enters upon land of another with permission, but without invitation, express or implied, of the owner or occupier, he is a licensee only and there is no duty to use vigilance to prevent the doing of things which the owner had no reasonable ground to assume the child would do. A licensee takes the property as he finds it with a duty upon the owner to refrain from any affirmative act of negligence and from inflicting any willful or wanton injury. Or, to express it differently, active negligence may render the owner or occupier liable.

(*Paquet* v. *Barker*, 250 App. Div. 771; *Meyer* v. *Pleshkopf*, 251 App. Div. 166, affd. 277 N. Y. 576.)

Of course, there may be circumstances where a change in the general condition of an area or of a public way may create certain obligations. For example, sudden alterations in public ways, creating hidden peril, would require warnings or proper precautions, the standards of reasonableness varying with the circumstances of the case. (Cf. *Vaughan* v. *Transit Development Co.*, 222 N. Y. 79.)

In the final analysis, the particular facts of each case applied to general principles of negligence law will determine liability. This was expressed, strikingly, in *Kermarec* v. *Compagnie Generale* (358 U. S. 625, 630–631 [1959]): '' The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. * * * Through this semantic morass the common law has moved, unevenly and with hesitation, towards ' imposing on owners and occupiers a single duty of reasonable care in all the circumstances.' ''

There is no competent proof here of a snare or a trap for the condition complained of was readily discernible, not created with a view to causing harm to invitees or trespassers, nor in and of itself, unreasonably dangerous.

Likelihood of presence; probability of harm; obviousness or degree of danger; notice; foreseeability; whether a duty of care existed and, if so, was that duty breached; and did such breach proximately cause harm are all factors to be considered and charged. It is questionable also if there was anything about the nature of this excavation which could be considered so alluring or enticing as to warrant recognition of potential danger of the kind claimed even under a most liberal view.

Even if this were exclusively private property as the defendant contends, that single fact alone would not negative liability. The '' right of exclusive possession does not carry with it the privilege to engage in conduct fraught with unreasonable probability of harm to the lives and limbs of people merely because there is no consent to their presence.'' (2 Harper & James, Law of Torts, § 27.7.)

The converse is equally true if this be considered public property. That classification alone would not serve to impose liability. The existence of a duty and a breach of such duty, proximately causing harm are prerequisites to liability.

The charge, while excellent in some respects, failed to clearly and adequately set forth the applicable principles of law. Where a charge is inadequate or of so confusing a character as to preclude fair consideration by the jury, a judgment will be reversed and a new trial ordered. (*Fox* v. *Hindus,* 268 App. Div. 916; cf. *Counihan* v. *Werbelovsky's Sons,* 5 A D 2d 80.) Nor does the fact that exceptions were not taken to errors in the court's charge prevent this court from ordering a new trial in the interests of justice. (*Storms* v. *City of Fulton,* 263 App. Div. 927; *Gambino* v. *Lucas & Co.,* 263 App. Div. 1054.)

In passing, it might be noted that the award to the infant seems excessive.

The judgment appealed from should be reversed, on the facts and the law and in the interests of justice, and a new trial ordered, with costs to appellant to abide the event.

BREITEL, J. P., RABIN, M. M. FRANK and VALENTE, JJ., concur.

Judgment unanimously reversed, on the facts and on the law, and in the interests of justice, and a new trial ordered, with costs to the appellant to abide the event.