APRIL J. DREYER, as Administratrix of the Estate of Stephen M. Dreyer, Deceased, Respondent-Appellant, v TISHMAN REALTY AND CONSTRUCTION CO., INC., et al., Appellants-Respondents.

First Department, April 29, 1976

*Arthur N. Seiff* of counsel *(Julius Gantman,* attorney), for appellants-respondents.

*Harry R. Schwartz* of counsel *(Harry H. Lipsig, P. C.,* attorney), for respondent-appellant.

SILVERMAN, J. These are appeals by defendants from a

judgment for plaintiff as reduced by the Trial Judge, after a general jury verdict for plaintiff, and by both parties from the unfavorable portions of the order reducing the verdict.

The action is for damages for wrongful death and conscious pain and suffering of plaintiff's intestate. This is the second trial in this action. The first trial resulted in a verdict and judgment for plaintiff, which this court reversed, ordering a new trial. *(Dreyer v Tishman Realty & Constr. Co.,* 41 AD2d 628.) This court stated: "The main difficulty, however, is that the charge presented the jury with no proper definition of what standard should apply as to defendants' duty to the unfortunate electrician; the only difference outlined by the court was between a trespasser—the proof was clear that the man was not—and one entering the room with permission. No distinction whatever was made as to the latter class, embracing as it does both invitees and licensees. It is therefore impossible to explain what rationale was availed of by the jury in reaching its decision, and a new trial is required, at which it may be established, under proper instructions, what was the status of the decedent electrician, and what standards of duty on the part of defendants related to that status. Until this question is resolved, it is impossible to resolve the issue of which of three theories of liability presented by the court to the jury for consideration—if any at all—may be considered." It was thus established as the law of the case in this court that (a) the standard of duty on the part of defendants depends on the status of plaintiff's intestate as licensee or invitee; and that (b) a question of fact was presented as to whether plaintiff's intestate was a licensee or an invitee.

On the second trial, the jury in addition to bringing in a general verdict, was required to answer a special interrogatory as to plaintiff's intestate's status; they answered that plaintiff's intestate was a licensee. To the extent that this answer to the interrogatory may be inconsistent with the general verdict, the answer to the interrogatory controls (CPLR 4111, subd [c]).

There is no evidence that defendants violated the limited duties traditionally imposed upon a landowner in favor of a mere licensee. "Where a person goes upon the premises of another without invitation, but simply as a bare licensee, and the owner of the property, passively, acquiesces in his coming, if an injury is sustained by reason of a mere defect in the premises, the owner is not liable for negligence; for such

person has taken all the risk upon himself. * * * Toward mere trespassers or bare licensees the rule is well settled that the only duty owing to them by the owner or occupier of land is to abstain from inflicting intentional, wanton or willful injuries unless he maintains some hidden engine of destruction, such as spring guns or kindred devices, upon his property." *(Mendelowitz v Neisner,* 258 NY 181, 184, quoted with approval in *Carbone v Mackchil Realty Corp.,* 296 NY 154, 158-159; and *Molnar v Slattery Contr. Co.,* 8 AD2d 95, 98.) As in the *Carbone* case, in this case too, "[t]he record is devoid of proof that at the time of the accident the defendants, by any affirmative act, changed conditions existing at the site * * * or created new perils there." (296 NY at p 159.) *See, also, Schlaks v Schlaks* (17 AD2d 153, 157) as to the limited meaning of "affirmative act of negligence" in this context.

Plaintiff's intestate went into a switchboard room where there were open power switches whose dangers are obvious to any person living in our modern electrified society and particularly so to an apprentice electrician with two years' experience. He went there to get a 50-foot metal electrical snake. The danger from the snake coming into contact with the open high voltage switches was obvious. There was, apparently improperly, some combustible material (cartons, etc.) in the switchboard room, perhaps at some disputed distance from the switches; such danger as this combustible material contributed was again open and obvious. Defendant did not by its affirmative act change the conditions existing or create new perils therein. *(Carbone v Mackchil Realty Corp., supra.)* "A licensee takes the property as he finds it with a duty upon the owner to refrain from any affirmative act of negligence and from inflicting any willful or wanton injury." *(Molnar v Slattery Contr. Co.,* 8 AD2d 95, 98.) Accordingly, the complaint must be dismissed.

Judgment, Supreme Court, New York County (AMSTERDAM, J.), entered April 11, 1975 should be reversed on the law on defendants' appeal and the complaint dismissed. In view of the foregoing disposition, the appeals by plaintiff and defendants from the order entered June 3, 1975 (which denied defendants' motion to dismiss plaintiff's causes of action but which granted a new trial as to damages on the conscious pain and suffering action only, unless plaintiff accepts $5,000 thereon) should be dismissed as moot. Neither party shall recover costs on appeal, from the other.

CAPOZZOLI, J. (dissenting). I dissent and vote to affirm. This case presents fair questions of fact and, in two different trials, both juries have found for the plaintiff. Implicit in those findings was an adjudication that the defendant failed to exercise the sandard of care which one maintaining a dangerous agency, such as electricity, is expected by law to exercise and, further, that it should have reasonably foreseen the likelihood of serious danger to anyone near the open, exposed switches which were completely uncovered and unprotected.

In Electricity, Gas and Steam, New York Jurisprudence (vol 19, § 70) we find the following: "Aptly stated by the authorities, where peril lurks to the actual or constructive knowledge of the person who maintains an electric line or other electrical apparatus, that person, as the creator of a dangerous agency, is bound to provide safeguards. Unusual precautions must be taken against extraordinary dangers, but where mere potentiality of injury exists, only such foresight as appears to be commensurate with its reasonable probable occurrence need be employed."

The evidence in this case discloses that Strand Electric Company did a great deal of work in defendants'. building for both the tenants and the defendants during three years prior to the accident. Mr. Testa, the foreman, under whom the decedent worked, testified that an arrangement had been made with the building management whereby the employees of Strand were permitted to keep materials and tools in this switchboard room. This room was always locked and only the defendants' building manager, LaManna, and 13 of defendants' employees each had a key to the switchboard room. In order to enter this room the decedent would be let in by one of these defendants' employees. The evidence further showed that there were open power switches, with copper plates mounted directly on to the board and open to the air. There were no housings on these switches, although available, nor were there railings or barriers in front of the switchboard. In addition there is also testimony that there were cardboard cartons, wooden boxes and other combustible material stored all over this room. Mr. Testa testified that the cardboard cartons were four or five feet from the open switches.

I am of the opinion that the important question which is presented in this case is one of foreseeability of an accident as the one which befell the decedent. The clear neglect of these defendants and their failure to exercise reasonable care in the maintenance of the room, with its deadly open switches,

should be sufficient to hold them liable for this accident. The law should discourage the type of carelessness and negligence which two juries found in this case. By giving effect to the verdict of the jury the law would encourage proper maintenance of dangerous instrumentalities as the one involved in this case. To allow these defendants to escape liability beacuse of the questionable technicalities would be to encourage future carelessness.

It is clearly established that one of the requirements to impose liability on a person for its negligence, is that the risk of injury or damage must have been reasonably foreseen. Certainly, in this case, it should have been reasonably foreseeable to these defendants that the maintenance of these open switches, and the combustible materials in the same room, raised the likelihood of injury to one within that room. Time and again it has been said that the risk reasonably to be foreseen defines the duty to be obeyed. In order for these defendants to be found guilty of negligence it is not required that they should have been able to perceive the injury in the precise form in which it resulted. (See 41 NY Jur, Negligence, § 33.) The standard of care required from one who maintains a dangerous instrumentality is commensurate with the risk to be reasonably foreseen from it. (Same authority § 47.) Electricity is an agency of great potential peril and the person who maintains it is bound to provide safeguards and, while such a person is charged with reasonable care, such care must be consistent with the practical operation of the facility. In *Bennett v New York & Queens Elec. Light & Power Co.* (294 NY 334, 337-338) the court said:

"We cannot say as matter of law, as has the Appellate Division, that upon the evidence of record before us the defendant was free from actionable fault. The standard of care required of one maintaining a dangerous agency must be commensurate with the risk therefrom reasonably to be foreseen. In the present case the vigilance required of the defendant depended upon the likelihood of danger to which those near its wires [in case at bar live switches] would be exposed by reason of the voltage of electricity which those wires carried. That voltage proved to be a death-bearing current which required of the defendant protective measures which, in existing circumstances, were proportioned to the danger which its transmission created. [Citing cases.]

"In the record at hand we find evidence of risk to the

decedent and his fellow workers within the range of reasonable apprehension. The question was for the jury whether the decedent met his death by reason of the fact that, with knowledge of conditions under which the decedent was working the defendant failed to take those precautions dictated by the danger to which he was exposed."

The majority bases its conclusion on the fact that, whatever dangers there were in this room, should have been apparent to the decedent and it concludes that, since he was a licensee, he took the property as he found it and the defendants cannot be held responsible. In this connection it is well to observe that the tri-partite classification of invitee, licensee and trespasser, which the courts have created from time to time, is being attacked from many quarters as outmoded and has come under increasing criticism. It is further criticized on the gound that distinctions between classes of persons have no logical relationship to the exercise of reasonable care for the safety of others. In a number of States they have abolished these distinctions and treat a social guest as an invitee. (See *Mangione v Dimino,* 39 AD2d 128.) Legal scholars also have continuously directly attacked these classifications as having no purpose in the determination of the liability of a wrongdoer to the victim.

In discussing the responsibility of a telephone company to one electrocuted by a loose wire, where defendant contended that deceased was a trespasser because he sought to appropriate property in *Morrison v New York Tel. Co.* (277 NY 444, 449) the court said:

"Even as against a trespasser, some care is to be exercised.

'The duty of care, which the law imposes upon those who undertake to operate so dangerous a force as electricity, may, under some circumstances, be due to one who, technically, is a trespasser. In such a case as this one, its special facts are for consideration, and upon them, and not solely with reference to the ownership or occupancy of the *locus in quo,* the question of duty must be determined.' *(Newark Electric Light & Power Co. v. Garden,* 78 Fed. Rep. 74, 77; writ of certiorari denied, 166 U. S. 722.)".

In the case of *Martinez v Kaufman-Kane Realty Co.* (34 NY2d 819) a 15-year-old plaintiff climbed a fire escape which overhung a public way. The fire escape collapsed and he sustained serious injury. At page 821 the court said: "Since injury to infant plaintiff resulted from an artificial, dangerous

condition on defendant's property, the decisive issue was the foreseeability of the risk of the accident which resulted in the injury. Under the facts of this case, the duty of care owed plaintiff could be correlated to the risk of harm reasonably to be perceived, regardless of status, whether that of trespasser, licensee, or invitee in the traditional sense. [Citing cases.]"

In the same case Judge WACHTLER, in a concurring opinion, said: "It is evident that the respondent in this case was a trespasser. If I favored continued adherence to the legal ramifications attached to that classification in New York, I would be constrained to reverse in this case. [Citing case.] However, for the reasons so well delineated by the California Supreme Court in *Rowland v. Christian* (69 Cal. 2d 108) I feel the legal classifications of trespasser, guest and invitee, no longer have validity."

(Also, see, dissenting memorandum of Mr. Justice MURPHY, in *Quinlan v Cecchini,* 52 AD2d 553.)

In any event, I do not believe that the case at bar should be considered as raising a true question of the exact classification of the decedent insofar as his presence in this room was concerned. This was not a social visit, this was a workingman, directed by his foreman to go to that particular room to pick up material which was being used on the job. He knew from his connection with his employer that material and tools were kept in that room and, as a subordinate workman, he had little, if any, choice in obeying his instructions.

"[L]egal responsibility, if any, for injury caused by machinery which has possible dangers incident to its use should be shouldered by the one in the best position to have eliminated those dangers." *(Micallef v. Miehle Co.,* 39 NY2d 376, decided April 8, 1976.) This language is particularly applicable to the case at bar. As the plaintiff's experts testified, certain precautions should have been taken by the defendants to prevent what was a foreseeable occurrence of injury.

Amongst their other contentions defendants argue that the plaintiff should not recover because the decedent was guilty of contributory negligence. It is the general rule that questions of contributory negligence are for the jury to pass upon. Insofar as the case at bar is concerned, the burden of proving contributory negligence falls upon the defendants, in view of the fact that we are dealing with a death case and the defendants have affirmatively pleaded this defense.

As was said in *Rossman v La Grega* (28 NY2d 300, 304, 305):

"it is likewise the general rule where contributory negligence is an affirmative defense the injured person 'is presumed to have used due * * * care.'

There has been a noticeable reluctance by the court to apply strictly in death cases the doctrine of contributory negligence. The last time that the court was unanimous in holding a dead person negligent as a matter of law was almost 40 years ago".

Unfortunately, we do not know just exactly what happened in the switchboard room. We are dealing with a death cause and, therefore, certain well-established rules are applicable. In *Braun v Buffalo Gen. Elec. Co.* (200 NY 484, 496) the court said: "It has often been said that where the injured person is dead wider latitude should be allowed to the jury in passing on this question of contributory negligence, and this case seems to come well within those where it has been decided on meagre evidence that the care of the deceased person was a question for the jury. [Citing cases.]" Also, in *Freedman v Buffalo Gen. Elec. Co.* (185 App Div 203, 205) the court said:

"There was no eye witness to the accident and no direct evidence as to what he was doing at the time of the accident, or how he came in contact with the cable. He may have taken hold of the wire for the purpose of bringing on the light, as is contended, or he may have been standing against the pole and put his hand unconsciously on the cable.

"These circumstances, unexplained, are sufficient to warrant a finding of actionable negligence. *(Bennett v. International R. Co.,* 180 App. Div. 460.)"

In the case of *Cruz v Long Is. R. R.* (28 AD2d 282, 283, affd 26 NY2d 927) a wrongful death action, the court, Mr. Justice EAGER, said: "In determining whether questions of fact were presented for determination by the jury, the proof 'must be judged in the light of these four well-established principles: (1) that the plaintiff is "not held to as high a degree of proof * * * as where an injured plaintiff can himself describe the occurrence"; (2) that the "evidence adduced at the trial is to be considered in the aspect most favorable to plaintiff", who "is entitled to the benefit of every favorable inference which can reasonably be drawn from the evidence"; (3) that the burden is on the defendant to establish the decedent's contributory negligence, and (4) that "if any possible hypothesis

based on the evidence forbids the imputation of fault to the deceased, as matter of law, the question is for the jury"""" (Citing cases).

For the reasons given, I am of the opinion that the judgment below should be affirmed.

KUPFERMAN, J. P., MURPHY, and LANE, JJ., concur with SILVERMAN, J.; CAPOZZOLI, J., dissents in opinion as to reversal of judgment entered April 11, 1975.

Judgment, Supreme Court, New York County, entered on April 11, 1975, reversed, on the law, without costs and without disbursements, the judgment vacated and the complaint dismissed.

Cross appeals from order, Supreme Court, New York County, entered on June 3, 1975, unanimously dismissed as moot, without costs and without disbursements.