RAMONA CRUZ, as Administratrix of the Estate of GILBERTO CRUZ, Deceased, Appellant, *v.* LONG ISLAND RAIL ROAD COMPANY, Respondent.

First Department, November 28, 1967.

*Robert Klonsky* for appellant.

*William F. McNulty* of counsel (*Anthony J. McNulty* with him on the brief; *George M. Onken,* attorney), for respondent.

EAGER, J. The plaintiff in this wrongful death action appeals from a judgment entered upon a dismissal of the complaint by the Trial Judge at the close of the evidence.

The action was brought to recover for the death of a pedestrian struck by defendant's engine in the daytime at the Maspeth Avenue railroad crossing in Queens County. There were no eyewitnesses to the striking of the decedent by defendant's engine and " the law recognizes that plaintiff will have to establish fault by a showing of various circumstances from which a jury can draw fair and reasonable conclusions." (*Wragge* v. *Lizza Asphalt Constr. Co.,* 17 N Y 2d 313, 320.) In determining whether questions of fact were presented for determination by the jury, the proof " must be judged in the light of these four well-established principles: (1) that the plaintiff is 'not held to as high a degree of proof * * * as where an injured plaintiff can himself describe the occurrence'; (2) that the ' evidence adduced at the trial is to be considered in the aspect most favorable to plaintiff', who ' is entitled to the benefit of every favorable inference which can reasonably be drawn from the evidence '; (3) that the burden is on the defendant to establish the decedent's contributory negligence, and (4) that ' if any possible hypothesis based on the evidence forbids the imputation of fault to the deceased, as matter of law, the question is for the jury ' (*Andersen* v. *Bee Line,* 1 N Y 2d 169, 172; *Flynn* v. *Long Is. R. R. Co.,* 289 N. Y. 283; *Chamberlain* v. *Lehigh Val. R. R. Co.,* 238 N. Y. 233, 235; Decedent Estate Law, § 119)." (*Paul* v. *Staten Is. Edison Corp.,* 2 A D 2d 311, 313–314.)

Although there was no direct evidence to establish decedent's position at the time he was struck, he was observed shortly before the accident standing on the westerly sidewalk of Maspeth Avenue several feet north of the crossing. The jury could find that, while walking southerly on the crosswalk to his place of work which was located on the other side of the crossing, he paused at the crossing, and was struck by the overhanging grab-iron bar of a westbound " light engine " (engine without cars attached) operated over the crossing in reverse at a considerable speed. The evidence would support a finding that, at the

time the decedent was struck, he had walked to the tracks and was standing on or near the crosswalk, near the southeast corner of the gateman's shanty and close to the northerly rail of the westbound track. It could be found that, as the decedent approached or stood near the tracks, his attention was drawn to another train, a long freight train, which was then crossing Maspeth Avenue on the eastbound track. (The eastbound track was located south of and adjacent to the westbound track.)

The crossing was protected by gates but the "short arm" extension gate which would bar the westerly crosswalk approaching the crossing from the north had been missing for a long time. Obviously, one of the purposes of crossing gates is to keep highway and pedestrian traffic back from a position of danger when a train is passing. Because of the absence of this particular gate, however, pedestrians, awaiting the passing of trains, were accustomed to stand near the tracks and near the southeast corner of the shanty which was located about 5 feet from the westbound track.

Defendant's gateman, who had been notified by signals in his shanty that engines or trains were approaching on the two tracks in opposite directions, exited from the easterly door of his shanty, walked easterly toward the gate stanchion located easterly of the crosswalk and lowered the gates. According to the gateman's testimony, he was aware of an added responsibility to pedestrians because of the absence of the short arm gate. He said it was his function to let no one through on the crosswalk when a train was approaching. He testified that, on this occasion, after he had lowered the gates, he walked back to the shanty and stood on the crosswalk facing easterly. He said he did not see the decedent. The jury could find, however, that the decedent stood where the gateman could have seen him as he stood lowering the gates or as he walked back to the shanty. On the basis of the record, there was a question of fact as to whether the gateman exercised reasonable care in looking for pedestrians at the point where they usually stood when a train would pass.

It was the duty of the gateman not only to lower the gates but also to give pedestrians such other warning of approaching trains as an ordinary prudent gateman would. His duty and responsibilities must be judged in the light of the absence of the "short arm" gate at the crosswalk. Under the circumstances, there was presented the question whether the defendant was negligent in the failure to replace the "short arm" gate and in the failure of the gateman to observe the decedent and to warn him that, in addition to the eastbound train, another engine or train was also approaching the crossing on the west-

bound track near where the decedent was apparently standing. It was for the jury to say whether or not such negligence, if found, was a proximate cause of the accident.

Furthermore, the fireman, who was maintaining a lookout on the engine traveling on the westbound track, had a clear and unobstructed view of the crossing for 1,000 feet. Accordingly, the jury could find that he either did not look or did not see the decedent as he stood near the tracks. The fireman, who testified he was looking, was bound to see what was there to see. If the decedent was standing where the jury had a right to find that he was standing, he was visible to the fireman, and the jury could find that, in the exercise of reasonable care, the fireman should have observed the decedent and stopped the engine or retarded its speed so as to avoid the accident. (See *Klein* v. *Long Is. R. R. Co.*, 199 Misc. 532, affd. 278 App. Div. 980, affd. 303 N. Y. 807; *Mikorski* v. *City of New York*, 270 App. Div. 769.)

Finally, in this wrongful death action, the burden of establishing contributory negligence rested upon the defendant (Decedent Estate Law, § 131) and it may not be held as a matter of law that the defendant sustained its burden. A finding of contributory negligence would be required to rest on circumstantial evidence. The plaintiff in meeting the inferences which might support such a finding would not be held to as high a degree of proof as where an injured plaintiff could himself describe the occurrence (see *Noseworthy* v. *City of New York*, 298 N. Y. 76; *Paul* v. *Staten Is. Edison Corp.*, 2 A D 2d 311, *supra*).

A consideration of the reasonable inferences and every possible hypothesis based on the evidence forbids a matter of law imputation of fault to the deceased. (*Paul* v. *Staten Is. Edison Corp., supra*, pp. 313–314.) It may be inferred that the decedent was watching the eastbound freight train as it was passing and he may have approached the westbound track believing that the crossing would be free from danger on the passing of the eastbound train. It is reasonably possible that he was confused by the merging whistles and bells and could not hear the "light engine" approaching on the westbound track. We do not know whether he looked to the east up the westbound track, or, if he looked, when it was. Perhaps he looked but momentarily failed to realize that he had approached so close to the westbound track to be in such a position of danger that he might be struck by an overhanging grab-iron bar on an engine traveling on such track. Whether or not the decedent looked for or saw the danger, one can reasonably imagine the happening of this accident under circumstances where the issue of contributory negli-

gence would be one of fact. Therefore, the trial court was precluded from holding as a matter of law that the defendant had sustained its burden of proof on this issue.

In any event, if the jury did find that the decedent had unreasonably placed himself in a position of danger, it could also have found that the defendant's fireman should have observed the decedent's peril and averted the accident. The evidence was such that the " last clear chance doctrine " could be properly applied. (See *Klein* v. *Long Is. R. R. Co., supra; Kumkumian* v. *City of New York,* 305 N. Y. 167; *Chadwick* v. *City of New York,* 301 N. Y. 176.)

Giving the plaintiff the benefit of favorable inferences which can reasonably be drawn from the evidence (*Wragge* v. *Lizza Asphalt Constr. Co.,* 17 N Y 2d 313, *supra; Paul* v. *Staten Is. Edison Corp., supra*), the record discloses questions of fact which required a submission of the case to the jury. Therefore, the judgment for defendant should be reversed, on the law and the facts, and a new trial directed, with costs and disbursements to abide the event.

Botein, P. J., Tilzer, Rabin and McGivern, JJ., concur.

Judgment unanimously reversed, upon the law and upon the facts, and a new trial ordered, with $50 costs and disbursements to abide the result of the final judgment in the action.