GLADYS ABBOTT, as Executrix of EDWIN L. ABBOTT, Appellant, v. ST. LUKE'S MEMORIAL HOSPITAL CENTER, Respondent.

Fourth Department, January 13, 1972.

*Roger H. Williams* (*Kevin B. Blaney* of counsel), for appellant.
*Gorman, Waskiewicz, Lutz & Durso* (*Bartle J. Gorman* of counsel), for respondent.

DEL VECCHIO, J. P. On August 16, 1968 the decedent was assigned to a room with an electrically controlled bed equipped for top and bottom side rails. A nurse on duty on August 17 from 11:00 P.M. to 7:00 A.M. testified, by referring to entries she made in the hospital record, that the patient was restless and confused as to time and place and that he tried twice to get out of bed. She also made this entry, "Needs order for rails at bottom of bed for his own safety." Side rails are ordered by a doctor or by the supervisor if needed. No proof was offered to show whether a doctor or a supervisor ordered these rails; however, the undisputed proof is that the bottom rails were on the bed and up immediately before and after the accident.

The nurse on duty on August 18 from 7:00 A.M. to 3:00 P.M. made a notation in the hospital record that the patient was out of bed, sitting in a chair, had a quiet day and napped in the afternoon. She testified that he was at liberty to get out of bed when he chose to do so, that he might get up and get in a chair for 20 minutes, lie down for awhile, and then get up again.

The nurse on duty from 3:00 P.M. to 11:00 P.M. made a notation that the patient was out of bed in a chair and had a quiet evening.

The licensed practical nurse on duty from 11:00 P.M. to 7:00 A.M. testified that between 11:30 and 11:45, when she made the rounds and checked decedent's room, the patient was in bed resting and she was *positive* that there were four side rails on the bed and that they were up "because those were checked when we made our rounds". She found nothing unusual at that time. At 11:45 she was called to the patient's room and saw him on the floor beside his bed. At that time all four side rails were up and she *was sure* that the bottom side rails were *still up*. She helped to lift the patient from the floor, put him in bed, and waited for orders from the supervisor. When asked whether she knew who had put the side rails on the bed she testified that "that is usually done before 11:00 o'clock at night". Her written report of the incident shows that she "found patient on floor with legs under bed, head and shoulders resting on bed", and that bed rails were present and up.

The assistant nurse on duty from 11:00 P.M. to 7:00 A.M. testified that she made the rounds with the practical nurse but did not remember that particular night.

The nurse referred to in the dissenting opinion as the one who recalled going to the patient's room immediately after the fall was the supervisor on duty from 11:00 P.M. to 7:00 A.M. She testified that when she entered the patient's room, after she had been notified of the incident, he was lying in bed complaining of pain in his hip. She could not recall "whether there were or were not" side rails at the bottom of the bed. Having entered the room after the patient had been removed from the floor and put in bed she, of course, could not dispute the testimony given by the practical nurse that the bottom rails were up when the patient was found on the floor.

The practical nurse, the assistant nurse, and the supervisor were the only nurses on duty at the time of the accident who testified at the trial.

The doctors who examined and treated decedent testified that they were unable to get any information or history of the occurrence from the patient.

We find no proof in the record that the bottom side rails were not put on the bed or were not up on the night in question. The only positive proof offered by plaintiff is the undisputed testimony of the practical nurse supported by her written report that they were on and up before and after the incident. No proof was offered as to how the patient got out of the bed.

Upon this record we conclude that plaintiff has failed to show how the accident happened or that defendant's negligence was

responsible for it. No issue of fact having been presented as to the number or position of the side rails, the trial court was justified in granting a nonsuit and dismissing the complaint at the close of plaintiff's proof.

By no rational process could a jury find upon the proof presented that the proximate cause of the accident was a failure by defendant to furnish side rails. Insufficient evidence is, in the eye of the law, no evidence in the sense that there is none that ought reasonably to satisfy a jury (*Blum* v. *Fresh Grown Preserve Corp.*, 292 N. Y. 241, 245).

We recognize that, in an action for wrongful death caused by accident and as to which there are no eyewitnesses, the plaintiff is not held to as high a degree of proof as in a case in which the injured person can testify to the accident. In such cases the proof may rest upon inferences from circumstantial evidence, but the evidence must be such that reasonable inferences therefrom in support of all the elements of the cause of action may be drawn (*Cole* v. *Swagler*, 308 N. Y. 325). The burden was on the plaintiff to produce evidence of negligence; it could not be inferred from the fact the accident happened, nor could it be left to guess, speculation, or surmise (*Lahr* v. *Tirrill*, 274 N. Y. 112). "Where the evidence is capable of an interpretation which makes it equally consistent with the absence as with the presence of a wrongful act, that meaning must be ascribed which accords with its absence" (*Digelormo* v. *Weil*, 260 N. Y. 192, 199–200). The doctrine of *res ipsa loquitur*, urged for the first time on this appeal, is not applicable (*Shanon* v. *State of New York*, 29 A D 2d 1024).

The judgment should be affirmed.

MOULE, J. (dissenting). Decedent, an 85-year old male, was admitted to defendant hospital early in August, 1968 and was transferred on August 16, 1968 to the Allen Calder Wing. On August 18, 1968 at about 11:45 P.M. he was found on the floor beside his bed. A nurse observed that one leg was shorter than the other, and decedent was complaining of pain in his hip area. An examination on August 19, 1968 revealed a fractured hip and an operation was performed on it on August 21, 1968. He died on August 28, 1968; the immediate cause of death was given on the death certificate as myocardial insufficiency, and the fractured hip was given as a contributing cause.

An action for personal injuries and wrongful death was commenced in which plaintiff alleged that the defendant was negligent in failing to have foot side rails on the bed. The complaint was dismissed at the close of plaintiff's case. In reviewing the

determination of that motion, plaintiff is entitled to every reasonable inference that can be drawn from the facts (*Philpot* v. *Brooklyn Baseball Club*, 303 N. Y. 116), and since this is a death case, plaintiff is not held to as high a degree of proof as where an injured plaintiff is able to testify as to what occurred. (*Cole* v. *Swagler*, 308 N. Y. 325; *Noseworthy* v. *City of New York*, 298 N. Y. 76.) Plaintiff is deemed to have made a prima facie case if the evidence shows facts and conditions from which negligence on the part of defendant and proximate cause may reasonably be inferred. (*Wragge* v. *Lizza Asphalt Constr. Co.*, 17 N Y 2d 313, 320.)

A hospital is liable for injuries resulting from a lack of side rails where it is put on notice that a patient's condition requires them. (*Gordon* v. *Harbor Hosp.*, 275 App. Div. 1047; *Ranelli* v. *Society of N. Y. Hosp.*, 269 App. Div. 906, affd. 295 N. Y. 850; cf. *Mossman* v. *Albany Medical Center*, 34 A D 2d 263.)

I do not agree with the majority's statement that the undisputed proof is that foot side rails were on the bed and up immediately before and after the accident. The proof established that all beds in the wing had head side rails and were constructed so that foot side rails could be put on. Notations were made in the hospital record on August 16 during the 3:00 P.M. to 11:00 P.M. shift, and during the shift that started at 11:00 P.M. that decedent was "confused". Between 5:30 A.M. and 7:00 A.M. on August 18, notations were made that decedent was "Very confused. Restless at times. Needs careful and constant observation. Tried to get out of bed times one early in the shift and again early in the A.M. Patient stating that he did not want to oversleep and miss breakfast" and that "He needs order for side rails at bottom of bed for his own safety." There was testimony that foot side rails had to be put on with a wrench but no one testified to their being put on the bed, and there was nothing in the hospital records showing such installation.

Several nurses testified that they could not recall whether there were foot side rails on decedent's bed at the time of the accident. One of them specifically recalled going to his room immediately after the fall, and that she saw top side rails on the bed but did not recall seeing foot side rails. One nurse testified that there were foot side rails on the bed. Reference is made by the majority to an incident report to support this witness' testimony concerning foot side rails. While it indicates that side rails were up, the number of side rails is not given and there is nothing to show that foot rails were on the bed. This witness also testified that she was sure foot side rails were up

because this was one of the things she checked on her rounds, but this conflicts with the testimony of the other nurses that not all beds were equipped with foot side rails. Further, she testified that when decedent was found, his legs were under the bed and his head and shoulders were resting on it. If foot side rails were up, it is difficult to see how decedent could have been in this position.

The jury may have rejected the testimony of this witness and inferred that this 85-year-old man, who weighed but 126 pounds and was in the hospital to learn to use a walker, would not have been able to get out of the bed if foot side rails were attached to the bed and were in an "up" position. I believe that while there was no positive evidence that foot side rails were lacking, there was circumstantial evidence that they were and that it was sufficient to establish a prima facie case (*Spett* v. *President Monroe Bldg. & Mfg. Corp.*, 19 N Y 2d 203) and that, consequently, the plaintiff's case presented questions that should have been passed on by the jury. (*Thomas* v. *City of New York*, 25 A D 2d 787.)

MARSH, WITMER and HENRY, JJ., concur with DEL VECCHIO, J. P.; MOULE, J., dissents and votes to reverse the judgment and grant a new trial, in an opinion.

Judgment affirmed without costs.