OPINION OF THE COURT
Gerard M. Weisberg, J.
These claims are for personal injury, conscious pain and *917 suffering and wrongful death of Laura Jones.* Claims numbered 59542 and 59577 are duplicates, the former having been verified by Gloria Jones, the decedent’s daughter, owing to claimant’s then incapacity. Subsequently, Laura Jones personally verified Claim No. 59577 for her own personal injuries. These claims, along with Claim No. 60115, which is for wrongful death, were consolidated for trial.
On August 5, 1975 Laura Jones suffered a fracture of the right hip, while a patient at Pilgrim State Hospital (hospital). She was 84 years old at the time and had been admitted to the hospital in August, 1967 under a diagnosis of psychosis and cerebral arteriosclerosis. She died on February 12, 1976, approximately six months after the injury. The State is sought to be held liable on the theory that certain employees of the hospital either caused claimant to be dropped or negligently allowed her to fall, thereby causing a traumatic injury which hastened her death.
Claimant resided in Ward 4 of Building 14. This was a female geriatric ward containing approximately 45 patients. Claimant had been suffering from organic brain syndrome since at least 1967. Her mental condition was described by her psychiatrist, Dr. Ventorino Stefanucci, as confused and disoriented with a lack of ability to recognize people. She was ambulatory, but required assistance in taking care of personal needs such as dressing, showering and going to the bathroom. At approximately 5:40 a.m. on the date of the incident, claimant was awakened by Mary McGarr, a Mental Hygiene Therapy Aide (MHTA), whose shift was from 11:45 p.m. to 7:45 a.m. Ms. McGarr dressed claimant and then put her arm through claimant’s arm to assist her in walking to the day hall. Ms. McGarr noticed that claimant was unsteady on her feet and had difficulty walking. Based upon these observations, McGarr placed claimant in a wheelchair and took her to the dining room. At this time, claimant did not complain of any pain and did not appear to have suffered any injury.
At about 7:15 a.m., after claimant finished eating, Ms. McGarr took claimant to the bathroom and assisted her in going to the toilet. After placing claimant back into the wheelchair, she took claimant into the shower room. It was the function of the day shift to give showers to the patients, and at approximately 7:40 a.m., McGarr was relieved by Ms. *918 Gonzalez. While signing out, McGarr met Grace Lalone, an MHTA who was the supervisor of the day shift. Ms. Lalone asked if everything was all right, and McGarr replied that it was.
When Ms. Lalone arrived in the shower room, she observed claimant in a wheelchair. She testified that claimant did not ordinarily use one, and because of this fact, attempted to get claimant to her feet. At this time, Ms. Lalone observed that claimant was unwilling to put any weight on her leg. Claimant was placed back in the wheelchair and was put to bed. After being examined by the nurse on duty, a doctor was called.
Ms. Lalone filled out an incident report with regard to this occurrence which contains an encircled "G” next to the words "Accidental Injury”, and states as follows: "Pt. was sitting in a chair this a.m. and when I attempted to get her to stand, she was unable to bear any weight on her rt. leg. Pt. is in poor contact and unable to give any cause of injury. Put to bed. Supervisor notified.”
Claimant was examined by Dr. Tatjana Former, a staff psychiatrist whose duties included covering any emergencies in Building 14 on August 5. Claimant’s regular psychiatrist in Building 14, Dr. Stefanucci, was on his day off. Dr. Former requested that claimant’s hip be X-rayed. Claimant was subsequently diagnosed as having suffered a subcapital fracture of the right femur.
An entry in the hospital record indicates that on August 5, 1975, a request was made for an orthopedic consultation. This entry reads in part as follows: "This 75 yr o [old] F [female] fell & sustained Fx [fractured] hip.”
Another entry on the hospital record, dated August 7, 1975, indicates that surgery was recommended to excise the femoral head to eliminate pain. However, it was subsequently determined by doctors at the hospital that claimant was a poor surgical risk owing to a severe heart condition. As a result, no surgery was performed, and claimant was essentially confined to her bed or to a wheelchair until she died.
Gloria Jones, claimant’s daughter, was notified of her mother’s injury by letter dated August 5, 1975, signed by Alfred P. Pinard, M.D., acting director of Pilgrim State Hospital. This letter states as follows: "As you probably know, your mother met with an accident today, while in Building 14, and sus *919 tained an injury to her right hip. Therefore, she was transferred to Building 23, for proper care and treatment.”
Responding to this notification as well as to a phone call or telegram which she received, Gloria visited her mother in Building 23 on August 8, 1975. Claimant was depressed and was unable to communicate with her daughter as to what had happened. Gloria observed black and blue marks on her mother’s head and arms. Gloria had last visited her mother on August 3, 1975, at which time her mother was in a wheelchair. On this date Gloria took her mother to the lunchroom and later tried to assist her in going to the bathroom. She was unable to do so because claimant was too weak, and Gloria was unable to lift her.
During the August 8 visit, Gloria had a conversation with Dr. Stefanucci. As previously indicated, Dr. Stefanucci was normally in charge of claimant’s ward. She testified that upon asking Dr. Stefanucci what had happened, he told her that: "In lifting mother they let her drop and he was sorry”. The State moved to strike this alleged admission against interest and the court reserved decision.
Both claimant and the State called expert medical witnesses to the stand to render opinions concerning the cause of the hip fracture sustained by claimant. It was claimant’s position that the injury resulted from some traumatic occurrence such as a fall. The State’s contention as to the probable cause of the injury was that the fracture was spontaneous in nature and resulted from a bone condition known as osteoporosis. Osteoporosis is defined as a washing out of calcium in the bone. It results in a weakening of the bone and can cause pain. X rays of Laura Jones indicated a severe degree of osteoporosis in the left shoulder and a moderate degree in the spine, pelvis, hip and femur.
Claimant’s expert, Dr. Harry Sherman, testified that claimant suffered a subcapital fracture of the right femur. This is the most frequently fractured part of the femur in claimant’s age group. He gave the opinion that claimant’s injury was caused by a twisting of the femur, probably caused by a fall. This was substantiated by evidence of a bruise on claimant’s forehead. He testified that the moderate degree of osteoporosis in claimant’s hip would have made her more susceptible to fracture from relatively minor trauma, but was not severe enough to cause a spontaneous fracture. Dr. Sherman stated that by comparison to the hip, claimant’s lumbar spine was *920 much more severely affected, by osteoporosis, and that area had not sustained any injury. Additionally, in his opinion, where osteoporosis is severe enough to cause a fracture, one would expect to see a deformity, to wit: a crushing of the femoral head which was not indicated in claimant’s X rays. Dr. Sherman pointed out that a torsional injury such as a fall would have placed stress on precisely the area of the femur which was broken, whereas a spontaneous fracture could have happened at any number of locations. On cross-examination, Dr. Sherman did however agree with a statement in a recognized medical text to the effect that in the aged, a fall is usually the result of a fracture, not its cause.
Sherman stated that the hip fracture was an accelerating cause of claimant’s death, which resulted from the toxic effect of multiple bed sores occasioned by claimant’s invalidism after the fracture. He also stated that the elderly tend to survive longer when they can be active and that prolonged immobility causes respiratory and circulatory problems which hasten death.
The State’s expert, Dr. Herbert Cohen, testified that in his opinion the hip fracture sustained by claimant was spontaneous in nature and was caused by a weakening of the bone structure by osteoporosis. The presence or lack of a significant deformity in the femoral head did not in his judgment preclude a spontaneous fracture. Dr. Cohen was not prepared to rule out a traumatic occurrence as the possible cause of claimant’s injuries, but considered that claimant’s age and physical condition rendered a spontaneous fracture, perhaps causing a fall, the most likely diagnosis. In further contrast to Dr. Sherman’s testimony, he stated that the fracture was not a competent producing cause of death because the death was too remote in time from the injury. In his opinion, arteriosclerosis was the cause of claimant’s death, as indicated on her death certificate.
In assessing the medical evidence in this case, the court notes that both Dr. Sherman and Dr. Cohen were highly qualified, credible witnesses. Both doctors agreed that Laura Jones’ hip was affected by a moderate degree of osteoporosis. The court finds from all of the medical testimony and exhibits that there are two equally probable causes of claimant’s injury. The court cannot find, from this evidence alone, that accidental or traumatic injury was the cause of claimant’s hip fracture although the medical evidence was consistent with *921 this theory. It was also however equally consistent with the diagnosis of spontaneous fracture. Accordingly, the court must look elsewhere for some proof of causality.
MOTION TO STRIKE
As previously indicated, the State sought to exclude certain evidence of an alleged admission by Dr. Stefanucci to the effect that claimant had been dropped. The State’s position was that Dr. Stefanucci’s statement was based upon hearsay and therefore inadmissible. It is undisputed that Dr. Stefanucci was absent from the hospital on August 5, this being his day off. Therefore, whatever knowledge he may have acquired about the accident was necessarily obtained from sources other than personal observation. What or whom those sources were is not known. Dr. Stefanucci did testify that as the physician in charge of Laura Jones, it would have been part of his duty to ascertain the cause of her injury, and that he thinks he did so. He did not however recall making this admission and stated at trial that he had no knowledge of Laura Jones having been dropped by anyone.
The State principally relies upon Cox v State of New York (3 NY2d 693) in which the Court of Appeals considered the admissibility of a statement in a hospital record kept in the ordinary course of business to the effect that a certain patient had pushed claimant, also a patient, to the floor. The entry was made by a staff attendant who obtained the information from the claimant. The court ruled the statement inadmissible saying (p 698): "No member of the hospital staff had authority to bind the State by admissions based on hearsay”. In a more recent case, Hayes v State of New York (50 AD2d 693), the court rejected the admission of certain statements contained in a hospital record concerning the cause of claimant’s injuries. As in Cox, the source of the information was claimant himself.
In both of these cases, the inculpatory declarations were offered on the dubious theory that a self-serving statement originating with the plaintiff, when recorded in a business record, could thereby constitute an admission by the defendant. The present case differs from Cox and Hayes in that the source of Dr. Stefanucci’s knowledge could not have been the claimant, since all parties agreed that claimant was in poor touch with reality and never gave an account of the alleged accident to anyone including her daughter, Gloria. A further distinction lies in the fact that Cox and Hayes involved *922 statements made in hospital records sought to be admitted as business records, under circumstances making it highly unlikely that the recorder intended to adopt the statements contained therein. The present case involves an oral admission which by its terms constitutes the opinion of the declarant.
Claimant urges the application of Reed v McCord (160 NY 330) which stands for the proposition that an admission based on hearsay may nevertheless be received in evidence against a party as long as it appears that the declarant has adopted the statement as his own and is not simply repeating what another has said to him. The difficulty with claimant’s position is that Dr. Stefanucci was not a party, but was rather an employee of a party. The question of admissions based on hearsay made by employees or agents is governed by principles laid down in Spett v President Monroe Bldg. & Mfg. Corp. (19 NY2d 203). In that case plaintiff sought recovery for personal injuries caused by the negligence of defendant’s employee in leaving an object in front of plaintiff’s door. Defendant’s general manager made an inculpatory statement which was admitted as binding upon the corporate defendant, even though the manager had not witnessed the accident or the placement of the object. In an analogous case, Davison v Long Is. Home (243 App Div 791) the court admitted a statement made by a doctor who occupied the position of superintendent of the clinic, although similarly based on hearsay.
In another class of cases, courts have allowed admissions based on hearsay which were made by agents who, though lacking general authority to act for their principals, were specifically delegated the authority to make findings of liability. (See Anthus v Rail Joint Co., 193 App Div 571; Pekelis v Transcontinental & Western Air, 187 F2d 122, cert den 341 US 951.) In Anthus, the declarant was employed by the defendant for the specific purpose of reporting on accidents. Similarly in Pekelis, the defendant corporation organized a commission to investigate the crash of one of its airplanes, and to make a finding of liability if such was warranted. The findings of this commission were allowed as admissions, though clearly based on hearsay.
In the case at bar, the declarant was a staff psychiatrist at the hospital. It is clear that he had no general authority to act for the hospital. His duties were limited to the care and *923 supervision of his patients. Although Stefanucci testified that he thought that he tried to ascertain the cause of claimant’s injury in his capacity as her psychiatrist, there is nothing to indicate that anyone in authority at the hospital delegated to him the responsibility for ascertaining liability in the case. On the contrary, there was an administrative panel constituted by the hospital for this purpose, and Dr. Stefanucci testified before it. Under these circumstances, the court concludes that Dr. Stefanucci’s admission could not bind the State.
The present case is distinguishable from Lichtenstein v Montefiore Hosp. & Med. Center (56 AD2d 281), cited by claimant. In that case the court admitted an entry in a hospital record made by doctors employed by the defendant hospital to the effect that plaintiff’s death was the result of suicide after elopement from the hospital. Unlike the present case, the diagnosis made by defendant’s doctors in Lichtenstein as to the cause of plaintiff’s death, was founded upon their personal knowledge of plaintiff’s mental condition, not upon hearsay statements as to the cause of an alleged accident.
In view of the foregoing, the court hereby grants the State’s motion to strike Dr. Stefanucci’s alleged admission.
LIABILITY
In a death case such as this, the claimant is not held to the same degree of proof required in a case where the injured person may take the stand and give his version of the happening of the accident. (Noseworthy v City of New York, 298 NY 76.) Claimant need not prove the precise acts of negligence, nor must every possible nonnegligent cause be excluded. (Swain v Gianone, 282 App Div 966; Rosenberg v Schwartz, 260 NY 162.) It is axiomatic however that claimant has the burden of proving, albeit circumstantially, that some negligence occurred. (Cole v Swagler, 308 NY 325; Abbott v St. Lukes Mem. Hosp. Center, 38 AD2d 176; Cruz v Long Is. R. R. Co., 28 AD2d 282; Mehra v Bentz, 529 F2d 1137, cert den 426 US 922.) Moreover, the mere fact of injury does not give rise to an inference that the State was negligent. (La Plante v State of New York, 31 AD2d 570; Lahr v Tirrill, 274 NY 112.)
As is readily apparent from a review of the evidence, no competent proof of any specific acts of negligence was produced by claimant. The testimony of Grace Lalone and Mary McGarr, both of whom were claimant’s witnesses, does not provide any evidence of negligence. On the contrary, their *924 testimony was exculpatory. Claimant argues that these witnesses were not credible in their account of the incident, but such a contention violates the rule that the party calling a witness vouches for his credibility. (People v De Martini, 213 NY 203.) As stated in Greenleaf on Evidence (§ 442): "When a party offers a witness proof of his cause, he thereby, in general, represents him as worthy of belief.” (See, also, Richardson, Evidence [10th ed], § 508.) It was, of course, open to claimant to impeach the testimony of these witnesses to the extent permitted by law, or to offer evidence contradicting all or part of their testimony. As the trier of the facts, the court must determine the credibility of witnesses, and may accept or reject all or part of a witness’ testimony. (Becker v Koch, 104 NY 394.) The court observes however that if it was claimant’s purpose in calling these witnesses to attempt to elicit inculpatory statements from them, the effort was a failure. It is not now permissible to attack their general credibility or to predicate an inference of negligence upon the contention that they were biased.
As previously indicated, the medical evidence provided at least two equally probable causes of the injury. Even if the court were to find that Laura Jones suffered a traumatic fracture, as claimant maintains, this fact alone does not give rise to an inference of negligence. Laura Jones’ advanced age and decrepit physical condition are entirely consistent not only with the State’s contention of spontaneous fracture, but with the likelihood of a traumatic fracture from some nonnegligent cause. (See Rodriguez v State of New York, 50 AD2d 985.) Claimant’s expert, Dr. Sherman, testified that the condition of osteoporosis in claimant’s hip rendered her susceptible to fracture from relatively minor trauma. Claimant could have stumbled, or perhaps sat down too heavily in a chair, thus causing the injury. She was unable to communicate effectively and may have been unaware that she was injured. Indeed, Gloria Jones’ testimony that claimant was already in a wheelchair on August 3, suggests that the fracture may have occurred prior to August 5 and was simply not discovered until then. As the court stated in Stuart-Bullock v State of New York (38 AD2d 626, 627): "Where there are several possible causes of an accident, for one or more of which a defendant is not responsible, a plaintiff cannot recover without proving that the injury was sustained wholly or in part by a cause for which the defendant was responsible (Ruback v. *925 McCleary, Wallin & Crouse, 220 N. Y. 188, 195; Frohm v. State of New York, supra; Maislin Bros. Transp. v. State of New York, 15 A D 2d 853).”
Upon all of the evidence adduced at trial, the court finds that claimant has failed to prove by circumstantial evidence or otherwise that Laura Jones’ injuries and death proximately resulted from the negligence of the State. Accordingly, these claims are dismissed.

 Laura Jones will hereinafter be referred to as claimant.