**Ellen C. McCULLOUGH, Individually and as Executrix of the Estate of Peter J. McCullough, deceased, Plaintiff,**

v.

**The UNITED STATES of America, the Port Authority of New York and New Jersey, The Boeing Company and Rockwell International Corp., Defendants.**

No. 76 C 967.

MDL No. 227.

United States District Court,
E. D. New York.

April 21, 1982.

Frank H. Granito, Jr., Speiser & Krause, New York City, for plaintiff.

H. Richmond Fisher, U. S. Dept. of Justice, Civ. Div., Washington, D. C., for defendants.

## DECISION AND ORDER

BRAMWELL, District Judge.

On June 25, 1975, Eastern Air Lines Flight 66 crashed on its final approach to Kennedy International Airport. 113 people lost their lives in the tragedy. Among them was plaintiff's decedent, Peter J. McCullough. Mr. McCullough, an employee of Eastern Air Lines ("Eastern"), was in the cockpit performing the duties of a Check Airman conducting a line check on Flight Engineer Gary M. Geurin.

In 1976, Mrs. McCullough brought the instant action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et seq.* (1976) In the suit she alleges that the negligent acts and omissions of the Federal Aviation Administration ("FAA") contributed to her husband's death.[1] The United States interposed four affirmative defenses,[2] the first and second of which were apparently abandoned upon the United States' admission of negligence.[3] What remain are the defenses of contributory negligence and intervening and superseding cause.

Plaintiff now moves for partial summary judgment dismissing these remaining affirmative defenses. She states that the material facts are not in dispute and that the defenses are unavailable as a matter of law. The Government opposes the motion, maintaining that there are outstanding issues of material fact which preclude granting the motion at this time. Defendant's counter 9(g) statement raises four alleged issues of fact:

1. Plaintiff's decedent had a duty not to contribute to lack of cockpit discipline by participating in distracting conversations and allowing such conversations to occur when vital windshear information was being broadcast over the final vector control frequency by Eastern Airlines Flight 902.

2. Such actions constitute contributory negligence and bar plaintiff's recovery as a matter of law.

---

1. The plaintiff sued the Port Authority of New York and New Jersey, The Boeing Company, and Rockwell International Corporation. Eastern was not named as a defendant because, as Mr. McCullough's employer any claims against it are governed by New York's Worker's Compensation Law (McKinney 1965).

2. The defenses, as set forth in the answer to the amended complaint are:

   1. Failure to state a claim upon which relief can be granted;

   2. lack of jurisdiction under the Federal Tort Claims Act;

   3. contributory negligence; and

   4. imputed negligence and intervening superseding negligence which cuts off any negligence of the United States.

3. *Defendant's Supplemental Answers to Interrogatories* # 1a. The contributory negligence and intervening superseding cause defenses are the only ones still seriously relied on by the Government.

3. The accident was caused solely by the negligence of Eastern Airlines.

4. Any negligence on the part of the air traffic controllers in not reporting a thunderstorm cell on the final approach was cut off by the intervening and superseding negligence of Eastern Airlines.

Facts "1" and "2" encompass the contributory negligence allegation, while "3" and "4" relate to the intervening and superseding cause defense. Plaintiff argues that these "facts" are not facts at all, but conclusions of law drawn from the undisputed facts. Whether plaintiff's assertion is valid requires an examination not only of the facts, but of the law involved in each affirmative defense. I will discuss the contributory negligence defense first.

The essential elements of negligence, and of contributory negligence, are the existence of a duty (to adhere to the proper standard of care), breach of that duty, causation and damage.[4] The Government argues that Mr. McCullough had a duty not to contribute to lack of cockpit discipline, which duty he breached affirmatively by making irrelevant comments and failing to properly monitor the flight engineer and passively, by not stopping extraneous conversations in the cockpit. This lack of discipline, allegedly attributable to Mr. McCullough, is said to be a cause of the crash which resulted in Mr. McCullough's death.

■ The threshold question, as I see it, concerns the nature and extent of Mr. McCullough's duty. In other words, what would a reasonably prudent person in the same circumstances be required to do to avoid harm to himself? The United States argues that Mr. McCullough had an affirmative to maintain both his own and the rest of the crew's discipline. I believe that both parties and the Court agree with the legal theory underlying the first part of the argument, that is, that Mr. McCullough had a duty not to disrupt cockpit discipline by *his own* unwarranted behavior. The disagreement on this point is with the facts. Plain-

tiff maintains that no reasonable person could interpret the facts to find that Mr. McCullough's conduct constituted contributory negligence. The Government argues that the facts are in dispute and are susceptible of more than one interpretation. Thus, it contends, summary judgment is not proper at this time.

The evidence of cockpit conditions prior to the crash is meager at best. Since everyone in the cockpit died, the only evidence is the tape of the last minutes of the flight contained on the cockpit voice recorder ("CVR"), a transcript of which was prepared by the parties. Some of it is unintelligible and some remarks cannot be attributed with certainty to a specific person. However, the attorneys for the parties have stipulated to the transcript as it stands. Following are the remarks attributed either solely to plaintiff's decedent or to Mr. McCullough or Flight Engineer Geurin, and the times at which they were made. To put them in their proper perspective, I note that Flight 66 first heard Eastern Flight 902's windshear reports at 1600:08. The crash occurred at 1605:15.

| Time | Speaker |
| --- | --- |
| 1544:08 | McCullough/Geurin |

"Yeah you work, do everything you can and they'll screw it." Tr. 13 [5]

| 1544:45.5 | McCullough/Geurin |
| --- | --- |

[In response to Captain's statement]: "Aw, get off the Air National, for christ sakes"
"Aw, Jesus h." Tr. 14

| 1545:56 | McCullough/Geurin |
| --- | --- |

"Jesus Christ National"

| 1551:57 | McCullough/Geurin |
| --- | --- |

" * * Just like to see the Christmas Tree effect" Tr. 24 [6]

| 1557:25 | McCullough |
| --- | --- |

"As you * know, we're carrying minimum more and more and if things like this start to happen we're gonna be in bad shape"
"Start looking at the gas *."
" * * look at the weather for the alternate."

---

4. *Prosser, Law of Torts*, §§ 30, 65 (4th ed. 1971).

5. "Tr." refers to pages of the CVR Transcript.

6. "*" refers to unintelligible words.

1558:15 McCullough/Geurin

"Now tell him [a passenger] in about one more hour we'd get to come down whether he wanted to or not" Tr. 33.

As can be seen, only one set of remarks, made at approximately 1557:25 can be attributed to Mr. McCullough with any certainty. Furthermore, this last remark by Mr. McCullough occurred approximately three minutes before the first windshear report.

■ Plaintiff argues that none of the exchanges not unqualifiedly attributed to Mr. McCullough can be imputed to him for purposes of proving contributory negligence. The burden proving contributory negligence in wrongful death actions is on the defendant. N.Y.E.P.T.L. 5–4.2 (McKinney 1981). Moreover, there is a presumption that due care was exercised by the decedent which must be rebutted by the defendant. *Emens v. Lehigh Valley*, 223 F. 810 (N.D.N.Y.1915). The plaintiff is also entitled to the benefit of every favorable inference which can reasonably drawn from the evidence. *Cruz v. L.I.R.R.*, 28 A.D.2d 282, 284 N.Y.S.2d 959 (1st Dept. 1967).

Applying these long-established principles to the instant facts, I find that the United States cannot raise a colorable issue of fact over who made the unattributed statements. The Government has given no indication that it will be able to prove that Mr. McCullough made the statements; in fact, I do not see how it ever could. Since all inferences must be drawn in favor of the decedent, *Cruz, supra*, it must be assumed that Mr. McCullough did not make the remarks.

■ This leaves us with Mr. McCullough's statements made at 1557:25 concerning fuel and weather conditions at the alternate airport. The Government cannot seriously consider these to be frivolous or disruptive statements. It does however, argue that they somehow show negligence on the part of Mr. McCullough in not properly supervising Flight Engineer Geurin. I do not agree. The statements are, it is true, susceptible of various interpretations. However, none of them leads to an inference of negligence. Eastern Captain Leslie Beech felt that they were instructional in nature. *Plaintiff's reply affidavit* p. 3. It is also possible that Mr. McCullough was directing Flight Engineer Geurin to check the weather and fuel for this flight. If the check *were* necessary to prevent the crash, which has not been shown, and if these checks were indeed not made, which has also not been shown,[7] the negligence was Flight Engineer Geurin's, not Mr. McCullough's. Mr. McCullough gave a direction and could reasonably expect that it would be carried out, which it may have been. Moreover, the affidavit of Charles Dyer states that Mr. McCullough was an observer not a supervisor. The Government has not shown that plaintiff's decedent even had the authority to *command* Flight Engineer Geurin to follow his directions. And, of course, the negligence of fellow workers cannot be attributed to the decedent in order to show contributory negligence. *LaGattuta v. Central Hudson Gas & Electric Corp.*, 40 A.D.2d 686, 336 N.Y.S.2d 186 (2d Dept. 1972).

Finally, and with respect to all of the remarks possibly attributable to Mr. McCullough, I must note that the last of them was made approximately two minutes before the first windshear report. Hence, the decedent's conduct in no way interfered with receipt of the reports or with Captain's and Co-Pilot's ability to concentrate in the last critical minutes. In short, I find, as a matter of law, that no reasonable interpretation of the evidence could support a finding that Mr. McCullough's conduct was a disruption or distraction which contributed to the crash. The alleged issues of fact raised by the defendant do not constitute a genuine dispute and cannot, as a matter of law, lead to a finding of contributory negligence.

*See Plaintiff's Reply Affidavit pp. 3–4.*

---

**7.** Contrary to the defendant's contention, an alternate airport was selected prior to takeoff.

■ I turn now to the question of whether Mr. McCullough had a duty to control the conduct of others so as to prevent or stop the disruption of cockpit discipline. I find, as a matter of law, that he did not. The United States argues that Mr. McCullough's affirmative duty to maintain discipline is found in the Federal Aviation Regulations ("FAR"), published in Volume 14 of the *Code of Federal Regulations* (1981). I do not agree, and, in fact, believe that the Regulations support an opposite conclusion.

To begin with, Mr. McCullough was not a required crewmember. *See* 14 C.F.R. § 121.385 (1981). He was conducting a line check pursuant to *Company* policy and not Federal Aviation Regulations, which do not require flight check for flight engineers holding a commercial pilot certificate. 14 C.F.R. § 121.425.

As stated above, Mr. McCullough's role was one of observation not supervision. While an extreme and immediate emergency, such as illness of a crewmember, may have led to his taking an active role in flying the plane, no such situation was presented here.

A second ground for finding no affirmative duty to control cockpit discipline is found in 14 C.F.R. §§ 121.533(3)(d) and (e) (1981), which provide:

(d) Each pilot in command of an aircraft is, during flight time, in command of the aircraft and crew and is responsible for the safety of the passengers, crewmembers, cargo, and airplane.

(e) Each pilot in command has full control and authority in the operation of the aircraft, without limitation, over other crewmembers and their duties during flight time, whether or not he holds valid certificates authorizing him to perform the duties of those crewmembers.

*See also* 14 C.F.R. § 91.3. It is quite clear that, under the applicable regulations, the Captain is in sole command of the crew. As Mr. Dyer states in his affidavit "it would be a serious breach of cockpit discipline for a Flight Engineer Check Airman to interpose himself between the pilot in command and the other members of the crew in that such conduct would undermine the authority given to the pilot in command by the Company and the Federal Aviation Administration." *Dyer Affidavit* ¶ 13. The ultimate authority of a captain over his crew and his ship, except in the most extreme circumstances, is a principle not only of long standing, but one with roots in concepts of discipline and responsibility which retain their validity today. *See, Tilley v. United States,* 375 F.2d 678 (4th Cir. 1967). *Compare,* 1 J. Norris, *The Law of Seamen,* Chapter 25 (1970). Mr. McCullough not only had no affirmative duty to control the conduct of the crew, it appears that he actually had a duty not to interfere with the Captain's management of the crew. As a matter of law, Mr. McCullough's conduct did not fall below the standard of care which he was required to maintain during the flight. He cannot be found contributorily negligent. Summary judgment on the defense of contributory negligence should be entered in favor of the plaintiff.

Plaintiff also seeks dismissal of the defenses that Eastern's negligence was the sole cause of the crash or, in the alternative, that the intervening and superseding negligence of Eastern cuts off any liability of the Government for the negligence of the Air Traffic Controllers.[8]

The United States has admitted the negligence of the Air Traffic Controllers which it employs but it has not indicated in precisely what way the controllers were negligent. Nonetheless, certain acts and omissions admitted by the defendant can be found to constitute negligence as a matter of law. At a minimum, the negligence of the controllers consisted of:

1. Failure to relay to Flight 66 the report of Flying Tiger 161 of windshear; *Arnold Deposition* pp. 481–82;

---

8. In a related case, *Mooney v. United States,* 77 C 1308, the plaintiff has also moved for partial summary judgment on the causation defense. The issue is identical in both cases. For pur-

poses of this motion, I have considered arguments made in both *Mooney* and the instant case.

2. failure to solicit pilot weather reports (PIREPS) from the pilots of the Finnair and Beech Baron planes, *Natale Deposition*, pp. 82; 357–66; and

3. failure to inform Flight 66 of thunderstorm activity, *Arnold Deposition* pp. 486–87, *Cameron Deposition* pp. 208–211, 220.

*Terminal Air Traffic Control Manual*, 7110.- 8D; *Ingham v. Eastern Air Lines, Inc.*, 373 F.2d 227 (2d Cir. 1967); *See also Eastern Air Lines v. Union Trust Company*, 221 F.2d 62 (D.C.Cir.1965), *cert. denied*, 350 U.S. 911, 76 S.Ct. 192, 100 L.Ed. 799 (1957); *Stork v. United States*, 430 F.2d 1104 (9th Cir. 1970); *Hartz v. United States*, 387 F.2d 870 (5th Cir. 1968).

■ The Government maintains that these acts did not cause the crash. Mrs. McCullough argues that cases clearly establish, as a matter of law, that negligence of this sort is a proximate or legal cause of the crash. I agree.

Briefly, the United States' position is as follows. The pilot and crew failed to follow proper call out procedures, to affirmatively seek information as to weather conditions, and to resolve any doubt about windshear. Most important, according to the defendant, the pilot and crew failed to timely execute a missed approach. Finally, it is ultimately the pilot's, and not the controllers', responsibility to decide whether to attempt a landing. *Ingham, supra* at 237. Thus, the theory goes, the negligence of the pilot and crew was absolutely independent of the controllers' negligence or else cut off the controllers' negligence. At best, the United States argues, the controllers' negligence was a prior and remote cause which "did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible." *Daggett v. State*, 37 Misc.2d 703, 237 N.Y.S.2d 158, 160 (Cr.Cl. 1962).

■ In order to avoid liability, an intervening cause must "so entirely supersede [the first actor's] negligence that it alone without his negligence contributing thereto in any degree produces the injury." *Foley v. State*, 265 App.Div. 682, 41 N.Y.S.2d 256 (4th Dept. 1943). Moreover, if the intervening cause, whether negligent or not, is foreseeable, it cannot supersede the original negligence. *Ingham, supra* at 237 n.11; *Preston v. Cauldwell—Wingate Co.*, 176 F.2d 237, 241 (2d Cir.) (L. Hand, J.), cert. denied, 338 U.S. 886, 70 S.Ct. 189, 94 L.Ed. 544 (1949); *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 169, 414 N.E.2d 666, 669 (1980); *Prosser, Law of Torts*, § 44 (4th ed. 1971).

Although questions of foreseeability and proximate cause are often felt to be questions of fact best left to a jury, under certain circumstances it is possible to reach a conclusion as to causation and liability as a matter of law. The instant case presents just such an occasion.[9]

■ As the plaintiff points out, the United States has made no attempt to distinguish the facts in this case from those upon which the *Ingham* decision was based. In fact, as the plaintiff also argues, the Government's negligence in this case is, perhaps, even more serious than that which was present in *Ingham*.[10] I believe that the Government's conduct in this case fits squarely within the holding of *Ingham*. Certainly the crash was a reasonably foreseeable consequence of the controllers' failure to properly advise Flight 66 of the thunderstorm activity and windshear. *Ingham, supra* at 237 n.11; *Derdiarian, supra*. More than that, I adopt Judge Kaufman's characterization of the Government's negligence as an "ever present" force which actually "set in motion the entire chain of events which finally culminated in the tragic crash." *Ingham, supra*. Based on the information which the crew actually had, Flight 66 was not *required* to abandon its

9. It is especially appropriate here since the record is amply developed and there can be no jury trial for the United States when it is a defendant. 28 U.S.C. § 2402 (1978).

10. In *Ingham*, the Government failed to notify the crew that visibility had dropped from one to three quarters of a mile. 373 F.2d at 233.

approach to Runway 22L. *Defendant's Supplemental Answers to Interrogations* # 33a. Had more complete information been supplied, the pilot and crew might have been able to make a more accurate assessment of the seriousness of the situation and have acted accordingly. *Id.* at 236. In short, I find that the later acts of the crew which led to the crash were entirely foreseeable consequences of the Government's original negligence and also that the Government's negligence was a substantial and continuing factor in bringing about the accident. As a matter of law, the negligence of the United States was a proximate cause of the crash. The plaintiff is entitled to partial summary judgment on the issue of causation.

For the foregoing reasons, the plaintiff's motion for partial summary judgment striking the affirmative defenses of contributory negligence and failure to establish proximate cause are hereby GRANTED.

IT IS

SO ORDERED.