JOHANNA MEYER, as Administratrix, etc., of ELMER MEYER, JR., Deceased, Appellant, *v.* MICHAEL M. PLESHKOPF, Individually and Doing Business as BRUSH FARM RIDING SCHOOL, and Another, Respondents.

First Department, May 7, 1937.

*Alvin R. Cowan* of counsel [*Harold M. Phillips* with him on the brief; *Nathan Finkelstein*, attorney], for the appellant.

*William L. Shumate* of counsel [*Alfred W. Andrews*, attorney], for the respondents.

GLENNON, J.  This action which was predicated upon the theory that the respondents were answerable in negligence, was instituted to recover damages for the death on July 10, 1931, of the plaintiff's intestate, Elmer Meyer, Jr., a seven-year-old boy, who was drowned in a manure pit which was practically filled with water.

The respondent, Brush Farm Stables, Inc., was the lessee of a plot of land covering four acres in Westchester county, N. Y.  The premises were maintained and operated by it as a stable and riding academy.  At the time of this accident there were about sixty horses in the stable.  One Joseph Cronin, an uncle of the deceased, was employed as a groom.  As part compensation for his services he was permitted to occupy a house which was located on the property about five or six hundred feet from the stable.  The manure pit, which was on the opposite side of the stable from the house, was made of concrete, about eighteen feet long, ten feet wide, and six or seven feet in depth.  It was constructed prior to the time Brush Farm Stables, Inc., took possession under its lease. It was not used for the purpose for which it was built since, although it was near the rear door of the stable, it was not readily accessible.

Cronin and his wife were not available as witnesses when the case came on for trial, as, according to the father of the child, " He got in some trouble " and disappeared with his wife without leaving a forwarding address.

The child was seen alive last about six P. M. in the evening of the tenth day of July.  Pleshkopf said, " I saw him before I left the stable, he was between the stable and the riding rink, between the house where Cronin lived and the riding rink."  Whether or not the child had his evening meal at Cronin's house does not appear. The hour when, and the manner in which he arrived at the pit where his body was found the following morning cannot be determined from the record.  The testimony adduced does not aid us in trying to determine how this boy met his tragic end.  We are left only to surmise.

The theory upon which the appellant seeks to fasten liability upon the respondents is that the manure pit was a trap or pitfall. The difficulty with that contention is that there is nothing in the record to sustain it.  In so far as the respondents were concerned the youngster was, at the most, a bare licensee on the premises. (See *Fox* v. *Warner-Quinlan Asphalt Co.*, 204 N. Y. 240.)  It is true that Cronin had the right to invite the youngster to his home. It did not follow from that, however, that the respondents permitted him to go into the stable or around it for the purpose of reaching the manure pit.  Pleshkopf as a reasonably prudent man could have had no reason to anticipate that the child, unaccompanied, would venture away from Cronin's house.

A review of the facts in this case leads us to the irresistible conclusion that the court at Trial Term committed no error either in law or in fact, and consequently, the judgment should be affirmed with costs.

TOWNLEY and COHN, JJ., concur; MARTIN, P. J., and O'MALLEY, J., dissent and vote to reverse and grant a new trial.

O'MALLEY, J. (dissenting). In this action in negligence for the death of plaintiff's infant intestate, the question presented is whether the finding in defendants' favor was contrary to the weight of the credible evidence.

The defendant Brush Farm Stables, Inc., had leased for some two years prior to the accident about four acres of ground in Westchester county from the Westchester park commission. There was maintained and operated a riding academy. The defendant Pleshkopf was the president of the corporation and in charge.

One Cronin was employed as a riding master and groom. As part of his compensation he was given the occupancy of a house near the stable on the farm and was entitled to invite visitors to come upon the premises.

The Cronins had been visiting the deceased's father. When they returned to the Brush Farm Stables they brought the infant, then seven years of age, with them, arriving sometime on July 10, 1931. At about six o'clock in the afternoon of that day the defendant Pleshkopf saw the boy playing around the driveway leading to the stable. At the time he was alone.

When the boy did not return to Cronin's house that evening, a search was instituted. His body was found the following morning in a so-called manure pit which was near the stable. The cause of death was suffocation resulting from drowning and according to the assistant medical examiner the infant probably had been dead from about the time the defendant Pleshkopf had last seen him.

This manure pit, constructed of concrete, was about ten feet in width by eighteen feet in length and from six to seven feet deep. It was filled with water, on the surface of which was a thin scum of straw and oats with a brownish appearance; also some sticks and bubbles. The bottom could not be seen.

A photograph said fairly to represent the appearance of the pit and showing the surrounding ground at the time of the accident was put in evidence by the defendants. It showed the edge of the concrete surrounding the pit extending from three to four inches above the ground and fairly visible. This photograph was apparently taken from an elevation greater than the height of a seven-year-old child, thus making the general situation more apparent.

Plaintiff's evidence, however, was generally to the effect that at the time of the accident this concrete appeared more nearly flush with the surrounding ground, at one side at least; and this because the grass at the time of the accident was overgrown. The defendants claimed that they never used the pit except for throwing in old horse shoes and other rubbish. There were no danger warning signs or other means of protection provided.

Under the circumstances it would seem that the deceased infant was an invitee. He was a guest of the Cronins, whose remuneration from the defendant corporation included not only housing, but the right to bring whomsoever they desired upon the premises. There was an implied invitation since there was some mutuality of interest. (*Meiers* v. *Koch Brewery,* 229 N. Y. 10, 13.)

Negligence was, therefore, clearly proved upon this uncontradicted evidence. The individual defendant, president of the corporate defendant, knew of the existence of this pit and the fact that it was filled with water. He had seen this small child playing in the vicinity. He gave the child no warning. The defendants in the exercise of reasonable care were bound to apprehend that a pit or structure of this kind filled with water would, or might at least, attract children to its edge, and that their curiosity would, or might, induce them to loiter about or engage in play around it; or that in coming around the barn they would meet it suddenly. Of course, if this pit had been devoted to its avowed purpose — the deposit of manure — a different situation would be presented. There would be little danger, if any, from a fall into manure. Here, however, there was a six- or seven-foot pit filled almost to the top with water, with a surface deceptive to a child of seven years of age, at least.

Assuming, without conceding, that the deceased infant was not an invitee, the same result would seem to follow. He certainly was not a trespasser. He was, at least, a licensee. The situation here presented was tantamount to a trap, under which circumstances liability again would be fastened upon those in control. The case would seem to come within the reasoning of *Parnell* v. *Holland Furnace Co.* (234 App. Div. 567; affd., 260 N. Y. 604).

There being no proof whatsoever of the defense of contributory negligence, the finding in behalf of the defendants was, therefore, contrary to the weight of the credible evidence.

It follows, therefore, that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

MARTIN, P. J., concurs.

Judgment affirmed, with costs.