BARBARA CORCORAN ET AL. v. PHILIP C. JACOVINO

HOUSE, C. J., THIM, RYAN, SHAPIRO and LOISELLE, Js.

Argued June 2—decided July 9, 1971

*Richard A. Silver,* for the appellants (plaintiffs).

*Richard P. Gilardi,* for the appellee (defendant).

LOISELLE, J.  The named plaintiff, a seventeen-year-old girl, hereinafter referred to as Barbara, brought this action by her father and next friend against the defendant.  Her father sought in the same action to recover for medical and hospital expenses which he had incurred on her behalf.  The complaint alleged personal injuries to Barbara incurred on October 16, 1964, and seeks recovery predicated on allegations of negligence by the defendant.  In his answer the defendant denied these allegations and pleaded a special defense of contributory negligence.

The plaintiffs claim that the trial court committed error in denying their motion to set aside the verdict which had been directed for the defendant.  The question presented is whether the trial court abused its legal discretion in denying the motion to set aside the verdict.  *Akers* v. *Singer,* 158 Conn. 29, 32, 255 A.2d 858; *Brooks* v. *Singer,* 147 Conn. 719, 158 A.2d 745.  Since the verdict was directed, the question presented is, in essence, whether the direction of the verdict was proper.  Directed verdicts are not favored and should be granted only when the jury could not reasonably and legally

reach any other conclusion. *Lombardi* v. *J. A. Bergren Dairy Farms, Inc.,* 153 Conn. 19, 23, 213 A.2d 449; *Santor* v. *Balnis,* 151 Conn. 434, 435, 199 A.2d 2. As the verdict was directed for the defendant, we must examine the evidence in the light most favorable to the plaintiffs. *Iannotti* v. *Grand Union Co.,* 158 Conn. 614, 615, 259 A.2d 634; *Lombardi* v. *J. A. Bergren Dairy Farms, Inc.,* supra.

The evidence taken in the light most favorable to the plaintiffs was as follows: On October 16, 1964, the defendant owned and operated a service station on Park Avenue in Bridgeport and employed one Harold Piskura, hereinafter referred to as Harold. At some time previously, the defendant had given Harold a key to the service station so that he could open and close the station as necessary. Harold kept his own car in the bay area of the station and often stayed after the station closed in order to work on his car, with the defendant's knowledge and permission. When he was not working Harold, with the defendant's knowledge, met with his friends and the defendant's friends at the station and such meetings were described as in the nature of a "country store crowd."

On October 16, 1964, at about midnight, on the way back from watching a football game with Barbara, he stopped at the defendant's service station to pick up his jacket, which he had left there previously. The station was closed and Harold entered the station with Barbara. At that time a couple of lights on the gas pumps in front of the station and a fluorescent bulb on the back wall of the bay area were lighted. Barbara entered the station with Harold because he did not want her to remain outside the station at that time of the night while he was getting his jacket.

They entered the office area, then went into the bay area, and she followed him to the end of the service area where he picked up his jacket, which was on his car. They walked back toward the office, side by side, with his left hand on her left shoulder and, while walking her toward the opening into the office area of the service station, he guided her into an open grease pit where she fell and sustained injuries.

At the time of her fall there was a car partially over the grease pit, but there was an open space of approximately two to two and one-half feet between the rear of the car and the edge of the grease pit and approximately two to three feet of space between the edge of the grease pit and the outer wall or door of the bay area of the station. The area where Barbara fell was not lighted.

The extent of the duty which the defendant owed to Barbara depends on her status at the time of her injury. The plaintiffs contend that she was an invitee, and the defendant that she was at most a licensee. Invitees fall into certain general categories. A public invitee "is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." Restatement (Second), 2 Torts § 332. A business invitee "is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." Restatement (Second), 2 Torts § 332. Section 52-557a of the General Statutes, which provides that "[t]he standard of care owed to a social invitee shall be the same as the standard of care owed to a business invitee," in effect recognizes a third kind of invitee, namely, the social invitee. The distinction between one who is

an invitee and one who is merely a licensee turns largely on whether the visitor has received an invitation, as opposed to permission, from the possessor of land to enter the land or remain on the land. Although an invitation in itself does not establish the status of an invitee, it is essential to it. Mere permission, as distinguished from invitation, is sufficient to make the visitor a licensee but it does not make him an invitee. Restatement (Second), 2 Torts § 332, comment b.

In the present case, the aforementioned evidence does not show that Barbara was either a member of the public invited to enter or remain on the premises by the defendant for a purpose for which the premises were held open to the public or that she was a person invited to enter or remain on the premises by the defendant for a purpose connected with the business of the defendant, and this evidence does not show that Barbara was a social guest of the defendant, nor that the purpose of Barbara's visit involved some economic or business benefit to the defendant. The evidence simply shows that Barbara was a social guest of the defendant's employee Harold.

There is no decision by this court, or statute, which for the purpose of determining the liability of an employer deals directly with the question of the status of an employee's social guest on the premises of the employer.[1] The general rule, however, is that such a guest is considered to be at most a licensee.

---

[1] The plaintiffs rely primarily on *Deacy* v. *McDonnell*, 131 Conn. 101, 38 A.2d 181, in support of their position that Barbara was an invitee as to the defendant. In that case, however, this court specifically declined to reach the question whether the plaintiff, who was a social guest of the defendants' servant at the time of her injury on the defendants' premises, was an invitee or licensee as to the

See *Roadman* v. *C. E. Johnson Motor Sales,* 210 Minn. 59, 297 N.W. 166; *Graves* v. *Massey,* 227 Miss. 848, 87 So. 2d 270; *Handleman* v. *Cox,* 39 N.J. 95, 187 A.2d 708; *Akerson* v. *D. C. Bates & Sons, Inc.,* 180 Ore. 224, 174 P.2d 953; *Hagan* v. *Delaware River Steel Co.,* 240 Pa. 222, 87 A. 574; see, generally, note, 78 A.L.R.2d 107. In short, Barbara was at most a licensee at the time of her injury.

A licensee coming on the premises of a possessor of land must take them as he finds them. *Hennessey* v. *Hennessey,* 145 Conn. 211, 213, 140 A.2d 473; *Laube* v. *Stevenson,* 137 Conn. 469, 474, 78 A.2d 693. "A possessor of land is liable for bodily harm caused to a gratuitous licensee by a natural or artificial condition thereon if, but only if, he: (a) knows of the condition, realizes that it involves an unreasonable risk to the licensee and has reason to believe that the licensee will not discover the condition or realize the risk, and (b) invites or permits the licensee to enter or remain on the land, without exercising reasonable care (1) to make the condition reasonably safe, or (2) to warn the licensee of the condition and the risk involved therein." *Dougherty* v. *Graham,* 161 Conn. 248, 251, 287 A.2d 382; see *Bears* v. *Hovey,* 159 Conn. 358, 360–61, 269 A.2d 77; *Hennessey* v. *Hennessey,* supra; *Lubenow* v. *Cook,* 137 Conn. 611, 613, 79 A.2d 826; *Laube* v. *Stevenson,* supra; Restatement, 2 Torts § 343.

Although the measure of duty which the defendant owed Barbara was that applicable to a licensee,

defendant. The plaintiffs also rely on § 52-557a of the General Statutes, which provides that a social invitee is owed the same standard of care as a business invitee. This statute, however, does not indicate that a social invitee of an employee on the employer's premises is to be treated as the social invitee of the employer.

such duty did not arise unless Barbara's presence on the premises became known to the defendant. The knowledge must have been actual or the equivalent to actual knowledge. The duty which a licensor owes to a licensee on the licensor's premises does not arise where there is no actual knowledge on the part of the licensor of the licensee's presence or where there are no circumstances from which such knowledge could be imputed to the licensor. See *Haffey* v. *Lemieux*, 154 Conn. 185, 189, 224 A.2d 551; *Lubenow* v. *Cook*, supra, 614; *Ward* v. *Avery*, 113 Conn. 394, 397, 155 A. 502. Here, it is undisputed that the defendant had no actual knowledge of the presence of Barbara in the service station at the time she was injured.

There remains the question whether knowledge of Barbara's presence on the premises of the service station at the time of her injury could be imputed to the defendant.

There was nothing in the evidence which would justify a conclusion that when Harold entered the service station he was acting within the scope of his employment or in furtherance of the interests of the defendant. Nor would the evidence justify a conclusion that he was acting as the defendant's agent. See *MacKay* v. *Aetna Life Ins. Co.*, 118 Conn. 538, 550, 173 A. 783; *Resnik* v. *Morganstern*, 100 Conn. 38, 43, 122 A. 910; 3 Am. Jur. 2d, Agency, § 275. Consequently, Harold's knowledge of the presence of Barbara on the premises could not be imputed to the defendant.

Nor does Barbara come within the rule that actual knowledge need not be shown provided it can be established that the licensor could reasonably anticipate the licensee's presence at the time and place in question. See *Haffey* v. *Lemieux*, supra; *Older-*

*man* v. *Bridgeport-City Trust Co.,* 125 Conn. 177, 182, 4 A.2d 646; *Meyer* v. *Pleshkopf,* 251 App. Div. 166, 167, 295 N.Y.S. 341, aff'd, 277 N.Y. 576, 13 N.E.2d 777.

The evidence presented in this case, viewed in the most favorable light for Barbara, as it must be by reason of the directed verdict for the defendant, leaves no doubt that the injuries received by her were not within the reasonable foreseeability of harm which the defendant is required to anticipate. There is nothing in the evidence which would support a finding by the jury that the defendant had reason to anticipate Barbara's presence. She knew she was in a bay area of a service station and that it would be dark therein at midnight unless someone put on the lights. The defendant could not anticipate that an employee, not within the scope of his employment but on an errand of his own, would bring a guest of his own into a darkened bay area late at night and practically lead her into a grease pit. While the defendant gave Harold the keys to the premises, he did so only to enable Harold to open the service station for business and close it whenever he was not there. Further, there is nothing in the evidence from which the jury could have concluded that the defendant gave Harold the keys so that he could enter the station around midnight to get his jacket. It is also true that the evidence indicated that the defendant knew that sometimes Harold had guests on the premises of the station after regular hours, but such knowledge cannot be extended to charge him with anticipating that in the nighttime Harold would bring a guest into the station and roam with her in its darkened work areas without turning on the lights.

The plaintiffs also assign error in the ruling of

the court denying their motion to amend the complaint. The amendment alleged an additional cause of action charging that the negligence of the defendant's employee, while acting within the scope of his employment, caused the resulting injuries to Barbara.

The case was tried on the complaint of the plaintiffs alleging that the defendant was negligent in his maintenance of a grease pit without barriers; that there was no proper lighting to apprise Barbara of this condition and that the defendant failed to warn her of the dangerous character of the open grease pit. The pleadings framed a breach of duty by the defendant to her as a social guest of his employee. The amendment sought to allege in addition a further vicarious liability from the alleged negligence of an employee. When the amendment was offered, at the close of the plaintiffs' case, it was claimed that the amendment was made simply to make the complaint comply with the evidence presented.

The court concluded there was no evidence to support a finding by the jury that at the time of Barbara's fall Harold was acting as agent, servant or employee of the defendant within the course and scope of his agency and employment and denied the motion to amend on this ground. The evidence on this point may be summarized as follows: The defendant employed Harold on a full-time basis and gave him a key to the service station so that in his capacity as an employee he could open and close the station when necessary. On October 16, 1964, Harold and Barbara attended a football game. After the game, at about midnight, they entered the closed station. Harold's only purpose in entering the station was to get his jacket and Barbara did

not enter the station for any purpose relating to its operation or ownership. There was no evidence which would support a finding by the jury that Harold was acting within the course of and scope of his employment at the time and place in question.

Whether an amendment should be granted at the close of the plaintiffs' case lies within the sound discretion of the court. Practice Book § 132; *Antonofsky* v. *Goldberg,* 144 Conn. 594, 598, 136 A.2d 338; *Yavis* v. *Sullivan,* 137 Conn. 253, 263, 76 A.2d 99. This court will not interfere with the decision of a trial court not to permit an amendment unless an abuse of discretion is clearly evident. *DuBose* v. *Carabetta,* 161 Conn. 254, 263, 287 A.2d 357; *Stanley* v. *M. H. Rhodes, Inc.,* 140 Conn. 689, 692, 103 A.2d 143; *Benson* v. *Morey,* 129 Conn. 390, 391, 28 A.2d 843; *Evans* v. *Byrolly Transportation Co.,* 124 Conn. 10, 13, 197 A. 758. "In exercising its discretion with reference to a motion for leave to amend, a court should ordinarily be guided by its determination of the question whether the greater injustice will be done to the mover by denying him his day in court on the subject matter of the proposed amendment or to his adversary by granting the motion, with the resultant delay." *State ex rel. Scala* v. *Airport Commission,* 154 Conn. 168, 178, 224 A.2d 236; *Cook* v. *Lawlor,* 139 Conn. 68, 72, 90 A.2d 164.

The amendment alleging liability on the part of the defendant was premised on the doctrine that a master is liable for the negligence of his employee while acting within the scope of his employment. The amendment was offered only after the plaintiffs had presented their case and the reason given by them for the amendment was simply to make their complaint comply with their proof. There was no

claim ever made that any other evidence was to be presented or offered. Thus, the granting of the motion to amend would have added nothing to the plaintiffs' case. *Farrell* v. *L. G. DeFelice & Sons, Inc.,* 132 Conn. 81, 89, 42 A.2d 697. Hence, the denial of the motion resulted in no injustice to the plaintiffs. See *State ex rel. Scala* v. *Airport Commission,* supra; *Cook* v. *Lawlor,* supra.

There is no error.

In this opinion the other judges concurred.