[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Walter Stewart as administrator of the estate of Marion Javery alleges negligence, nuisance and recklessness claims against both Federated Department Stores, Inc. ("Federated") and its corporate parent, the Campeau Corporation ("Campeau"). Federated and Campeau move to strike (#144) (#149) all counts of the complaint.
The file indicates that the defendants own and operate the Bloomingdale's department store in Stamford, Connecticut. They also own and operate a parking garage across the street from the store. The parking garage is held open to the public (patrons as well as non-patrons) and Federated changes no parking fees. Federated employs one security guard to protect the premises. On June 7, 1988, Marian Javery parked her car on the ground level of the garage and went into the Bloomingdale's store. She returned to her car at approximately seven in the evening. As she placed her packages into the trunk of CT Page 3949 the car, an assailant robbed and stabbed her. Marian Javery died of her wounds a short time later. The security guard on duty at the time was not in the garage because he had been called to the store.
"A motion to strike challenges the legal sufficiency of a pleading." Mingachos v. CBS, Inc., 196 Conn. 91, 108,401 A.2d 368 (1985). "In ruling on a motion to strike the court is limited to the facts alleged in the complaint," Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170,44 A.2d 1185 (1988), and must construe those facts in the manner most favorable to the pleader. Rowe v. Godou,209 Conn. 273, 378, 559 A.2d 1073 (1988). Legal conclusions or opinions stated in the complaint are not considered. Burns v. Gleason Plant Security Inc., 10 Conn. App. 480, 481,523 A.2d 940 (1987).
The plaintiff, in Counts One and Three, charges the defendants with negligence. Specifically, plaintiff alleges that the defendants, as store owners, owed a duty to protect their customer, Mrs. Javery, from reasonably foreseeable risks; that they breached that duty when they failed, in an area with a history of criminal activity, to adequately illuminate and secure their parking garage; and that this breach proximately caused Mrs. Javery's death at the hands of a third party.
The defendants moved to strike these counts, arguing that in three respects any possible negligence of their own did not, as a matter of law, proximately cause Mrs. Javery's injuries. First, defendants contend they are not liable because there was no direct physical contact between the victim and the alleged defects in the premises. Next they submit that the victim's injury (death by stabbing) is not of the same general type as would normally be expected from inadequate lighting and security and is therefore beyond the scope of the risk. Finally, the defendants argue that the assailant's intentional criminal act, as a matter of law, supercedes the defendants' negligence.
To state a cognizable negligence claim, the plaintiff must adequately allege the four elements of negligence; duty, breach, causation and damages. Doe v. Manheimer, 212 Conn. 748,755, 563 A.2d 699 (1989). Clearly the plaintiff has adequately alleged duty, breach and damages. Briefly, plaintiff adequately alleges a duty from the defendants to Mrs. Javery. "A business invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." Corcoran v. Jacovino, 161 Conn. 462, 465, 290 A.2d 225 (1971). A defendant owes a business invitee the duty of reasonable care to keep CT Page 3950 the premises safe for the reasonably foreseeable uses the invitee might make of them. Facey v. Merkle, 146 Conn. 129,133, 148 A.2d 261 (1951). Mrs. Javery's status was that of a business invitee because she was a Bloomingdale's customer and parked in the Bloomingdale garage. The plaintiff also alleged sufficient facts to satisfy the breach and damages element s.
The defendants' primary contention is that their conduct, even if negligent, did not proximately cause Mrs. Javery's injuries. Causation, or legal cause, has two components, cause in fact, and proximate cause. Cause in fact has a broad and simple test: but for the defendants' conduct, the harm would not have occurred. Liability, however, only attached if the defendants' conduct also proximately caused the harm. Proximate cause narrows the scope of liability and is defined as an actual cause that is a substantial factor in the resulting harm. Boehm v. Kish,201 Conn. 385, 391, 517 A.2d 624 (1986); Coste v. Riverside Motors, Inc.,24 Conn. App. 109, 113, 585 A.2d 1263 (1991). "The `substantial factor' test, in truth, reflects the inquiry fundamental to all proximate cause questions that is, whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." Doe v. Manheimer, supra, 758. In applying this test, the court looks back from the injury to the alleged negligent act for the necessary causal connection. Peterson v. Oxford, 189 Conn. 740, 749,459 A.2d 100 (1983). Furthermore, where an intentional criminal act is alleged to fall within the scope of the risk created by the defendant's negligence, Connecticut follows the Restatement rule:
 "Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the _intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct."
Restatement (Second), 2 Torts 442B.
Proximate cause is ordinarily a question of fact, and it becomes a question of law only when, "the mind of a fair and reasonable person could reach only one conclusion." Trzcinski v. Richey, 190 Conn. 285, 295, 460 A.2d 1269 (1983). The defendants cite Doe v. Manheimer, supra, for the proposition that, as a matter of law, direct physical contact between the victim and the defect in the premises is required to find proximate cause. In essence, absent physical contact, the victim's harm is outside the scope of the risk. Doe involved CT Page 3951 a plaintiff raped by a third party behind overgrown bushes on defendant's property. Applying the 442B rule, (rather than a physical contact rule) the court found that the intentional criminal misconduct was not within the scope of the risk created by the defendant's conduct because the landowner could not reasonably foresee that overgrown vegetation would lead to a violent criminal attack between strangers. Id., 762. Doe turned on foreseeability not physical contact. Additionally, in Merhi v. Becker, 164 Conn. 516, 325 A.2d 270 (1973), the absence of physical contact between the victim and the alleged negligence was not fatal to the claim. In Merhi, the defendant staged a picnic, and negligently failed to provide adequate security, and failed to monitor his guests in their consumption of alcohol. One angry guest drove his car through the picnic area and injured the plaintiff. Again the analysis involved the application of 442B rule, and specifically whether it was reasonably foreseeable that, during an unsupervised raucous picnic, a drunken guest would injure another. The foreseeability of the act, not physical contact alone, determines whether there is proximate cause.
Defendant further argues that, as a matter of law, Mrs. Javery's death by stabbing was not of the same general type as to be within the scope of the risk created by poor lighting and inadequate security. Under Merhi v. Becker, it is not necessary to foresee the exact injury. There the unsupervised picnic became more boisterous as the guests consumed alcohol. Furthermore, several fights broke out, putting the defendant on notice that some general harm harm to patrons from inadequately deterred angry conduct, would occur. Id, 521. To fall within the scope of the risk the defendant did not have to foresee that a guest would drive over another, but merely that under the circumstances the harm to patrons could occur. Similarly in this case, plaintiff alleges that there was a long history of theft, car break-ins, purse snatchings, muggings and robberies at knife point within the Bloomingdale's parking garage. Additionally, the Bloomingdale's store and the local area have a history of criminal activity. Just as in Merhi where the defendant should have foreseen a possibility of general harm to his patrons, the defendants here are not required to foresee a particular death by stabbing, but merely to foresee that a patron could be injured by a general criminal act.
Finally, the defendants claim that the assailant's intentional intervening misconduct supersedes their own negligence. In Cardona v. Valentin, 160 Conn. 18, 273 A.2d 697
(1970), the plaintiff's decedent fought with the manager of a pool hall and was escorted to the door. As this occurred the plaintiff's brother, Angel, entered and instigated a second CT Page 3952 fight. The court found that the defendant's negligent failure to provide adequate security was superseded by brother Angel's misconduct. The analysis focused, once again, on the 442B. Angel's misconduct was not within the scope of the risk, as the business owner could not reasonably foresee that the plaintiff's own brother, acting on the plaintiff's behalf, would enter the premises and initiate a brawl that would result in plaintiff's death. In the present case, the intervening actor intentionally caused Mrs. Javery's injuries, and therefore the issue is whether, under 442B, this act falls, as a matter of law, outside the scope of the risk created by the defendants' failure to secure the parking garage. The plaintiff alleged a history of criminal activity in the garage, the Bloomingdale's store and in the general vicinity. The harm to Mrs. Javery (robbery, stabbing, and death) is of the same general type as might be expected from a lack of security. Given these allegations, the assailant's acts do not, as a matter of law, fall outside the scope of the risk. Rather the plaintiff sufficiently alleges causation to withstand a motion to strike.
In the complaint's second and fourth counts, the plaintiff alleges that the defendants' parking garage is a nuisance. Specifically, plaintiff claims that the defendants operated the parking garage with inadequate security in an area with a history of criminal activity. They further argue his use created a continuing dangerous condition that constituted an unreasonable or unlawful use of land.
The defendants' motion to strike the nuisance claim is based on two arguments. First, that a parking garage does not have a tendency to cause injury to person or property. Second, the defendants contend the use of land as a parking garage is neither unlawful nor unreasonable.
Connecticut case law recognizes a variety of types of nuisance. Nuisances may be characterized as public or private, and may be absolute (intentional) or merely the result of negligence. "`Nuisances are public where they violate public rights, and produce a common injury,' and where they constitute an obstruction to public rights, that is, the rights enjoyed by citizens as part of the public. Higgins v. Connecticut Light Power Co., 129 Conn. 606, 611, 30 A.2d 388 (1943); Couture v. Board of Education, 6 Conn. App. 309, 312, 505 A.2d 432
(1986). A private nuisance, on the other hand, ". . .exists only where one is injured in relation to a right which he enjoys by reason of his ownership of an interest in land." Webel v. Yale University, 125 Conn. 515, 524, 7 A.2d 557 (1939).
A nuisance is said to be absolute where the creator CT Page 3953 intends the act that creates the condition, and the creator of an absolute nuisance may be strictly liable. DeLahunta v. Waterbury, 134 Conn. 630, 633-634, 59 A.2d 800 (1948). A negligent nuisance occurs where a creator fails to exercise due care in bringing about the condition. "The only practical distinction between an absolute nuisance and one grounded in negligence is that contributory negligence is not a defense to the former, but may be as to the latter." Kostyal v. Cass,163 Conn. 92, 98-99, 302 A.2d 121 (1971).
To prevail on a nuisance claim the plaintiff must prove four elements: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; (4) existence of the nuisance was a proximate cause of the plaintiff's injuries and damages." Filisko v. Bridgeport Hydraulic Co., 176 Conn. 33,35-36, 404 A.2d 889 (1978); see also State v. Tippetts-Abbett-McCarthy-Stratton, 204 Conn. 177, 183,527 A.2d 688 (1987). Plaintiffs alleging public nuisance have the increased burden of proving a fifth element, "that the condition or conduct complained of interfered with a right common to the general public." Doe v. Manheimer, supra, 755-756 n. 4. To prevail on an absolute public nuisance claim the plaintiff must prove a sixth element, that the defendant's intentional conduct caused the condition deemed to be a nuisance. State v. Tippett-Abbett-McCarthy-Stratton, supra, 183.
In the instant case, the plaintiff alleges only the first four elements of nuisance. They make, therefore, a private nuisance claim. While the complaint alleges that Mrs. Javery was a patron of the defendants and that she was injured in the defendants' parking garage, these allegations cannot be construed as an injury to an ownership interest in land. In fact, plaintiff alleges that the defendants owned, controlled, operated and maintained the parking garage. A patron injured inside a store could not maintain a private nuisance claim against the owner because the patron had neither a property interest nor a privilege in the premises. Dahlstrom v. Roosevelt Mills, Inc., 27 Conn. Sup. 355, 356, 238 A.2d 431
(1967). Since the plaintiffs cannot maintain a private nuisance claim, the defendants' motion to strike should be granted.
Alternatively, even if the plaintiff had alleged public nuisance, the claim would be insufficient as a matter of law. The plaintiff would have to allege facts demonstrating that the conditions in the parking garage interfered with a right common to the general public. Higgins v. Connecticut Light Power CT Page 3954 Co., 129 Conn. 606, 611, 30 A.2d 388 (1943). More importantly, a person entering a premises at the express or implied invitation of a tenant or owner is not exercising a public right. Rather, the person is entering as a visitor. Furthermore, the visitor cannot recover on a public nuisance claim. Webel v. Yale University, 125 Conn. 515, 514-5257 A.2d 215 (1939); Dahlstrom v. Roosevelt Mills, Inc., 27 Conn. Sup. 355,357, 238 A.2d 431 (1967). Following this same rationale, a federal district court dismissed a public nuisance claim by a plaintiff injured when spectators pulled down a goal post after a football game in the Yale Bowl. Cimino v. Yale University,638 F. Sup. 952, 954 (D.Conn. 1986). More recently, the public nuisance claim of a plaintiff injured while entering a shopping mall was stricken because, although "the public was invited to enter, . . .there was no public right to do so, and the defendant's establishment was not a public place where the public had a right to be." Smith v. Monitor Management, (1991 West Law 27988 (Conn.Super.)) In the case at bar, the plaintiff alleges that Mrs. Javery was a patron of the store, that the patrons were encouraged and permitted to park in the garage, and that the defendants own and control the garage. The allegations are clearly insufficient for a possible public nuisance claim.
The defendants' motion to strike the nuisance counts two and four should be granted. The four elements pleaded by the plaintiffs give rise to a private nuisance claim. Essential to a private nuisance claim is an injury involving an ownership interest in land. Since the plaintiff did not and cannot attribute Mrs. Javery's injuries to her interest in land, the claim must fail.
In Quinnett v. Newman, 213 Conn. 343, 348, 568 A.2d 786
(1990), a nuisance is defined as an inherently dangerous condition that has a natural tendency to inflict injury upon a person. The condition complained of in this case is the existence of a parking garage in an area of criminal activity, but such a garage does not have "a natural tendency to inflict injury upon a person." Id.
Thus, the nuisance allegations, whether public or private, absolute or negligent, fail to state a viable cause of action. In Counts Five and Six, plaintiff repeats all the allegations of negligence and then asserts that the failure to "provide adequate security" to invitees constitutes "reckless disregard and indifference to the rights of other."
The dispositive test is whether the conduct alleged can support a recklessness claim. "recklessness is a state of consciousness with reference to the consequences of one's acts. CT Page 3955 It is more than negligence, more than gross negligence." Dubay v. Irish, 207 Conn. 518, 532, 542 A.2d 711 (1988). Recklessness is further referred to as, "aggravated negligence," or something "more than any mere mistake resulting from inexperience, excitement or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention." Id, 533.
"The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury." Mooney v. Wabrek,129 Conn. 302, 308, 27 A.2d 631 (1942). Its characteristic element is the design to injure either actually entertained or implied from conduct and circumstances. Not only the action producing the injury but also the resulting injury must be intentional. Markey v. Santangelo, 195 Conn. 76, 77-78, 485 A.2d 1305 (1985). Reckless, wilful, wanton, and intentional misconduct are functional equivalents. This conduct is characterized as highly unreasonable and involves an extreme departure from ordinary care. Dubay v. Irish, supra, 533. In support of his recklessness counts, plaintiff alleges that the defendants failed to have an adequate surveillance system and failed to provide adequate lighting in the parking garage. Plaintiff also alleges insufficient and incompetent security personnel.
Finally, he alleges that defendants provided no security guard in the garage when Mrs. Javery was killed. (The guard had been summoned to the Bloomingdale's store.) While these alleged acts and omissions may lead to an inference that defendants breached a duty of ordinary care, I believe they do not, as a matter of law, amount to the outrageous behavior and extreme departure from ordinary care required for recklessness. Consequently, the defendants' motion to strike the recklessness count should be granted.
In conclusion, the defendants' motion to strike negligence Counts One and Three is denied, but is granted as to Counts Two and Four in nuisance, and also as to the recklessness Counts Five and Six, as well as the prayers for relief seeking punitive damages and attorney's fees.
WILLIAM B. LEWIS, JUDGE