[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE
On June 15, 1995, the plaintiff, Jason Bashura, filed a six count complaint against the defendants, Strategy Plus, Inc., and J.G.I. Enterprises, Inc., arising out of an incident wherein the plaintiff was allegedly injured while engaged in a war game while a patron at the defendants' amusement/entertainment facility. By way of an amended complaint, filed July 31, 1995, the plaintiff alleges that he was a business invitee who had entered onto the defendants' premises to engage in a game of "paint ball," and that during his participation in the game he incurred various injuries. The plaintiff alleges that he has suffered said injuries as a result of the defendants' negligence. (Count One.) The plaintiff further alleges that the defendants are liable pursuant to General Statutes § 52-572m, et seq.; (count two); that the defendants created a public nuisance; (count three); and, that the defendants are strictly liable for the plaintiff's damages because "of its ; engagement in the above described abnormally dangerous activity." (Count Four). Count five asserts a violation of Connecticut's Unfair Trade Practices Act, premised upon the defendants' alleged violation of General Statutes § 35-1, and count six alleges a breach of an implied contract.
On July 31, 1995, the defendants filed a motion to strike and a supporting memorandum. The defendants move to strike counts three and four on the ground that count three fails to state a claim in public nuisance, and that count four fails to state a claim for strict liability based upon inherently dangerous or ultra-hazardous activities. The plaintiff filed a memorandum in CT Page 12116 opposition on August 9, 1995.
The motion to strike tests the legal sufficiency of a pleading; Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432
(1989); and the court is limited to the grounds specified in the motion. Blancato v. Feldspar, 203 Conn. 34, 44, 522 A.2d 1235
(1987). When ruling on a motion to strike, the court is restricted to the facts alleged, and it must construe those facts in the light most favorable to the nonmoving party. Rowe v. Godou, 209 Conn. 273,278, 550 A.2d 1073 (1988). If the facts provable under the pleadings would support a defense or a cause of action, the motion to strike must fail. Mingachos v. CBS, Inc., 196 Conn. 91, 109,491 A.2d 368 (1985).
The defendants argue that count three fails to state a cause of action in public nuisance because the plaintiff's allegations do not establish that he was in the exercise of a public right when he was injured, nor were the alleged defective conditions obstruction or violations of public rights. The plaintiff counters that he has properly pled the elements of a public nuisance and, "[a]s owners of the subject premises and operators of the amusement-entertainment business conducted thereon, the defendants maintained a nuisance that was, clearly, hazardous to members of the public including the plaintiff. . . ." (Plaintiff's Memorandum in Opposition).
Nuisances are characterized as public nuisances "where they violate public rights, and produce a common injury, and where they constitute an obstruction to public rights, that is, the rights enjoyed by citizens as part of the public. . . ." (Citation omitted; internal quotation marks omitted.) Higgins v. ConnecticutLight Power Co., 129 Conn. 606, 611, 30 A.2d 388 (1943). "[I]f the annoyance is one that is common to the public generally, then it is a public nuisance. . . . The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights. A public nuisance is one that injures the citizens generally who may be so circumstanced as to come within its influence. . . ." (Citations omitted; internal quotation marks omitted.) Id.
To establish a nuisance claim, a plaintiff must prove that: "(1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance CT Page 12117 was the proximate cause of the [plaintiff's] injuries and damages."Tomasso Bros., Inc. v. October Twenty-Four, Inc., 221 Conn. 194,197, 602 A.2d 1011 (1992). When a public nuisance is alleged, the plaintiff must further establish "that the condition or conduct complained of interfered with a right common to the general public . . . ." (Citations omitted; internal quotations marks omitted.)Doe v. Manheimer, 212 Conn. 748, 755-56 n. 4, 563 A.2d 699 (1989). "A nuisance is common or public, the terms being synonymous, where it affects the rights enjoyed by citizens as part of the public, that is, the rights to which every citizen is entitled." (Internal quotation marks omitted.) Dahlstrom v. Roosevelt Mills, Inc.,27 Conn. Sup. 355, 357, 238 A.2d 431 (1967).
In the present case, count three, which incorporates paragraphs 1 through 19 of the first count, alleges in pertinent part that "[i]n the course of conducting its amusement/entertainment business, the defendant, Strategy Plus, Inc., possessed, operated and controlled, in conjunction with J.G.I. Enterprises, Inc. a certain large tract of land . . . which they opened to the public in exchange for a fee." (Amended Complaint, First Count, ¶ 6). In addition, the plaintiff claims that he "entered defendants' premises for the purpose of participating in the game of paint ball. The plaintiff was a business invitee." (Amended Complaint, First Count, ¶ 9). The plaintiff further claims that "[b]y opening its land to the public for the purpose of enabling the paying participants to engage in the game called `paint ball,' the defendants . . . intentionally, recklessly, or negligently created a public nuisance in that the failure to provide safe havens for participants and occupants of the property materially and injuriously affected the comfort, enjoyment and reasonable use of the participants, including the plaintiff, in that participants were unable to make equipment adjustments, take rests, obtain medical treatment, or in any other way temporarily escape potential injury." (Amended Complaint, Third Count, ¶ 20).
As indicated, the plaintiff alleges that he was a "business invitee." A business invitee "is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." (Internal quotation marks omitted.) Corcoran v. Jacovino, 161 Conn. 462,465, 290 A.2d 225 (1971). "[A] person entering a premises at the express or implied invitation of a tenant or owner is not exercising a public right. Rather, the person is entering as a visitor. Furthermore, the visitor cannot recover on a public CT Page 12118 nuisance claim." Stewart v. Federated Department Stores, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 103721 (May 17, 1991, 6 CSCR 561, 562, Lewis, J.)[1], citingWebel v. Yale University, 125 Conn. 515, 524-25, 7 A.2d 215 (1939);Dahlstrom v. Roosevelt Mills, Inc., supra, 27 Conn. Sup. 357 In Webel v. Yale University, supra, the court had emphasized that one entering "premises at the express or implied invitation of a tenant does not come upon them in the exercise of any public right . . . and, if injured, the visitor to the premises cannot base his right to recover upon the existence of a public nuisance." Id., 524-25. In Dahlstrom v. Roosevelt Mills Inc., supra, the court observed that the plaintiff, as a patron of a mercantile establishment, "was not in the exercise of any public right while on the defendant's premises," and could not base his right to recover upon the existence of a public nuisance. Id., 357. In that case a claim was made that the condition of a soft drink vending machine, maintained by the defendants, constituted a nuisance. Id., 356. The court emphasized that "[a]s a patron, the plaintiff was an invitee while in the defendant's establishment. While members of the general public were unquestionably welcome to enter the store and even solicited to do so, nevertheless they were not entitled to do so by virtue of any public right enjoyed by citizens as part of the public. The public was invited to enter, but there was no public right to do so, and the defendant's establishment was not a public place where the public had a right to be. The plaintiff was not in the exercise of any public right while on the defendant's premises, and he cannot base his right to recover upon the existence of a public nuisance." Id., 357. See also Doe v.Coleman Brothers, Inc., Superior Court, judicial district of New London at New London, Docket No. 523063 (May 26, 1993, 8 CSCR 663, Teller, J.) (because the plaintiff, an alleged "customer and business invitee" of a carnival did not allege "that she was injured in the exercise of a right common to the general public, she has not stated a sufficient claim of public nuisance.")
Accordingly, the court finds that the plaintiff has failed to allege sufficient facts to establish he was injured while exercising a right common to the general public. In fact, by alleging "business invitee" status, he has specifically plead facts inconsistent therewith. Defendant's motion to strike count three is granted.
The defendants further maintain that count four fails to state a claim of strict liability based upon an ultrahazardous activity because "[t]he shooting of paint balls in a war game, as described CT Page 12119 by the plaintiff, does not involve a risk of serious harm to those participating which cannot be eliminated by the exercise of utmost care." (Defendants' Memorandum, p. 4). The plaintiff responds that he has properly pled a claim based upon an abnormally dangerous activity. He contends that "[t]he risk posed by inexperienced players in the game of paint ball poses potentially serious injury to all within any degree of proximity and thus is; intrinsically dangerous[,]" and he concludes that "[t]he activities of the defendants in this particular case were abnormally dangerous involving a high degree of risk of serious harm. . . ." (Plaintiff's Memorandum).
The doctrine of strict liability imposed upon one who engages in an ultrahazardous activity has "traditionally been applied in cases involving blasting and explosives. . . . Connecticut's sole extension beyond blasting cases is to damage from a concussion resulting from pile driving. . . ." (Citations omitted.) Green v.Ensign-Bickford Co., 25 Conn. App. 479, 482-83, 595 A.2d 1383, cert. denied, 220 Conn. 919, 597 A.2d 341 (1991). Connecticut courts, "and other jurisdictions which recognize the doctrine of strict liability for dangerous activities, impose it only in narrow circumstances." Levenstein v. Yale University, 40 Conn. Sup. 123,126, 482 A.2d 784 (1984). "Typically, it has been found applicable when an activity, not regularly engaged in by the general public, is conducted in or near a heavily populated area, such that it necessarily subjects vast numbers of persons to potentially serious injury in the event of a mishap. " Id.
In determining whether an activity is abnormally dangerous, a court considers the following factors: "`(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.'" Id., 486, quoting 3 Restatement (Second), Torts, § 520. "The issue of whether an activity is abnormally dangerous . . . is a question of law for the court to decide." Green v. Ensign-Bickford Co., supra,25 Conn. App. 485.
In the present case, count four, which incorporates paragraphs one through nineteen of the first count, alleges that, as the plaintiff was proceeding with the game of paint ball, "an insect CT Page 12120 and/or other foreign matter entered into an opening in the goggles provided by the defendant, Strategy Plus, Inc. and/or J.G.I. Enterprises, Inc." (Amended Complaint, Count One, ¶ 12). He further alleges that he "proceeded to an area which he thought to be safe from the activities of other game participants and removed the goggles in order to dislodge the insect and/or other foreign matter[,]" and while he "was so engaged, another participant unknown to plaintiff shot paint from his paint ball gun in the normal course of the game and struck plaintiff in the face causing the plaintiff severe and serious personal injuries. . . ." (Amended Complaint, Count One, ¶¶ 13, 14). Count four further alleges that the defendants' conduct "in organizing, maintaining and implementing a paint ball game without providing adequate regulations and safe havens for participants, was an abnormally dangerous activity in that there was a high degree of risk of injury to participants, especially novice participants, including plaintiff." (Amended Complaint, Count Four, ¶ 20). The plaintiff claims that "[t]he defendants are strictly liable for all damages incurred by plaintiff as a result of its engagement in the above described abnormally dangerous activity." (Amended Complaint, Count Four, ¶ 22).
In Pye Hogan Machine Co. v. Hi-Tech Industries, Superior Court, judicial district of Middlesex, Docket No. 57907 (June 23, 1992, Austin, J.), the plaintiff alleged that a fire was caused by an ultrahazardous activity, that is, the operation of a lathe near highly flammable substances. The defendant moved to strike this count, and the court noted that "[b]y the plaintiff's own allegations, the inherently dangerous activity was not the operation of the lathe per se, but rather the operation or the lathe in the proximity of certain highly flammable substances." Id. Examining the factors enumerated in the Restatement, the court noted that although the absence of only one of the factors "is not ultrahazardous, this should be the result here because the ability to eliminate the risk through the operation of ordinary care is a factor which weighs particularly heavy in the balance." Id.
The court finds in the instant case that the activity alleged simply does not rise to the level of being ultra-hazardous or abnormally dangerous per se. To find otherwise would open a "Pandora's Box" and the doctrine of strict liability should not be so extended.
Accordingly, defendant's motion to strike count four is granted. CT Page 12121
COMERFORD, J.