[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case is a negligence action wherein the plaintiff requests damages for injuries sustained in a fall at the defendant's supermarket in Orange. Alleged as negligent conduct by the defendant, its agents, servants and employees are one or more of the following: causing or allowing the floor to be and remain in a slippery, unsafe and dangerous condition, causing or allowing the floor to be and remain covered with water knowing that said condition would be dangerous to the plaintiff and other patrons; causing and allowing the floor to be treated with a substance that caused it to become slippery; failing to repair or to remedy the aforesaid conditions; failing to make a reasonable inspection of the area; and failing to warn the plaintiff of the aforesaid conditions.
The defendant denied all of these allegations as well as the specific injuries claimed to have resulted therefrom. In addition, the defendant interposed a special defense, namely that the plaintiff's injuries were caused by his own inattentiveness and failure to have due regard for the circumstances prevailing at the site and were not caused by an action or failure to act of the defendant.
 I.
From the evidence presented including reasonably drawn inferences, the facts set forth below were established.
At about 2:30 p.m. on Sunday, September 22, 1991, the plaintiff arrived at the Stop Shop store on Bull Hill Lane in Orange. The weather was sunny and dry and the plaintiff wore shorts, a T-shirt and sneakers. On entering the store and afterward, the plaintiff was carrying rather than wearing his sunglasses. After paying for his purchases at an express register, the plaintiff picked up two bags of groceries and when walking toward the front door he slipped and fell. When the plaintiff slipped he realized that the tile floor was wet. He landed on his CT Page 13904 buttocks and then fell backward bruising his right elbow and hitting his back, right shoulder and head. The plaintiff's right knee and foot were also injured in the fall. Immediately thereafter, Rob Guillermo, the cashier who rang up the plaintiff's purchases and a policeman who was stationed at the store came over to where the plaintiff had fallen. Guillermo asked if the plaintiff was "O.K." and told the plaintiff that the floor had just been mopped.
In the area where the plaintiff fell, the tile floor appeared to be clean and unobstructed. John Erickson, who on September 22, 1991 was in charge of the front of the store where the baggers and cashiers are located as well as safety coordinator for the store, testified that customers were warned when the floor is wet by the presence of three-foot high orange cones. Erickson, however, had no independent recollection of the accident and relied upon notations he had made as safety coordinator as well as the report of the accident filed by Brian DaCunto. Erickon's [Erickson's] notes do not mention cones and although cones are mentioned in DaCunto's report he also was not present at the scene. The plaintiff testified that he did not see any cones. It may be that the placement of cones when a floor has been mopped is a usual custom and practice of Stop Shop but on the occasion of the plaintiff's fall no cones were present.
Following the fall, the plaintiff experienced pain in the cervical and lumbar spines, the right shoulder area, the great toe on the right foot and the central area of the right knee. He was seen by Dr. Naiman, an orthopod, three times starting on October, 1991. Dr. Naiman's diagnosis of the plaintiff's condition was rotator cuff derangement right shoulder, derangement MP joint right great toe with contusion, contusion of the right knee. This diagnosis was made and symptoms were noted at the plaintiff's examination on February 4, 1992. The bill for Dr. Naiman's services was $346.00.
In 1980, the plaintiff sustained a straddle-type injury while riding a bicycle that injured his perineum, the area between the scrotum and the anus. That injury resulted in a damaged urethra specifically the formation of a stricture which is a narrowing of the urethra caused by scar tissue. The urethra is a canal carrying urine from the bladder to the penis for discharge. A symptom of an urethral stricture is difficulty in urinating. The treatment called dilatation consists of insertion of metal rods of various sizes into the penis and then into the urethra to stretch out the CT Page 13905 stricture. Initially, the plaintiff's urologist was Dr. Stroup but from November, 1988, he had been under the care of Dr. Malitz. Before the plaintiff's fall on September 22, 1991, Dr., Malitz had performed dilatations on December, 1988 and December, 1989.
On October 2, 1991, the plaintiff reported to Dr. Malitz that his symptoms had suddenly become much worse after his fall at Stop Shop. A urethral dilatation under anesthesia was performed at Milford Hospital on October 18, 1991. At surgery, Dr. Malitz found the stricture to be more severe then on previous occasions when he had treated the plaintiff. Prostatitis, an inflammation of the prostate was also disclosed when the plaintiff was examined on October 18, 1991. Subsequently the stricture recurred and Dr. Malitz performed another dilatation under anesthesia at Milford Hospital on March 13, 1992. Since that date the plaintiff's urinary problems have subsided.
The bills of Milford Hospital for the two dilations performed by Dr. Malitz were $3,526.55. Anesthesia services cost $856.00 and x-rays were an additional $36.00. Dr. Malitz's fees were $875.00. The total charges for the post-fall dilatations was $5,293.55 which when added to Dr. Naiman's bill of $396.00 makes a grand total for medical charges of $5,639.55.
Some further factual findings have been made and appear in the next section of this memorandum.
 II.
The essential elements of a cause of action in negligence are well established. There must be a duty, a breach of that duty, causation and actual injury. RK Constructors, Inc. v. Fusco Corp.,231 Conn. 381, 384 (1994). The duty is to exercise due care.Steinhaus v. Steinhaus, 145 Conn. 95, 97 (1958). The extent of that duty, however, and the specific persons to whom it is owed depend upon the circumstances surrounding the conduct of the injured individual. RK Constructors, Inc. v. Fusco Corp., supra at 385. A common law distinction between social visitors and those doing business on the premises may be blurred by General Statutes § 52-557a, see Corcoran v. Jacovino, 161 Conn. 462, 465 (1971), but it cannot be disputed that as a customer of the store the plaintiff was a business invitee. Id. at 466. To the plaintiff, as a business invitee, the defendant impliedly represented that the customer-traversed area of the store was safe and the plaintiff was entitled to rely upon the representation. Furstein v. Hill,
CT Page 13906218 Conn. 610, 617 (1991). The court finds that the unmarked wet floor was a breach of the defendant's duty.
A principal issue in the case is the causal relationship or lack of it between the plaintiff's fall onto the wet floor and his urethral problems. There was disagreement between the experts. Dr. Malitz's report, admitted under General Statutes § 52-174(b) states that "The fall itself may have caused increased inflammation of the area of the urethra in which the stricture is situated, causing worsening urinary symptoms and subsequent more severe stricture." Dr. Malitz was also of the opinion that the fall could have caused the prostatitis, a condition that would worsen urinary symptoms.
An opinion contrary to that of Dr. Malitz was given by Dr. Reichgut a urologist who testified on behalf of the defendant. Dr. Reichgut had never examined the plaintiff and based his opinion on Dr. Malitz's reports and notes, the records from Milford Hospital as well as his own knowledge and experience. According to Dr. Reichgut, the placement of the urethra made it certain that when the plaintiff landed on his buttocks the impact did not cause a lighting up of the urethral stricture. On cross-examination, however, Dr. Reichgut was not so definitive and admitted that the stricture could be aggravated by trauma to the perineum.
When there is a conflict in the opinions of experts, it is the court's duty to accept that testimony which appears to be more credible. Feigenbaum v. Waterbury, 20 Conn. App. 148, 152 (1989). In the court's view, the opinion of Dr. Malitz, who had treated the plaintiff both before and after his fall provided the more credible evidence. Causation between the fall and the aggravation of the urethral stricture therefore was established as was pain and suffering before and after the dilatations. Causation also was present and not seriously contested between the fall and the plaintiff's treatment by Dr. Naiman.
The defendant pleaded in special defense that the plaintiff's injuries were caused by his own inattentiveness and fault. The burden of proving a special defense is on the party asserting it.Atlantic Richfield Co. v. Canaan Oil Co., 202 Conn. 234, 237
(1987). A review of the evidence shows that this burden was not met.
III. CT Page 13907
Judgment is rendered for the plaintiff. General Statutes §52-572h(f) requires that damages be separated into economic and noneconomic components. The sum of $5,639.55 is awarded as economic damages and the sum of $18,000.00 is awarded as noneconomic damages. Total damages equal $23,639.55. The plaintiff shall also recover taxable costs.
Jerrold H. Barnett, Judge